IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON HAMMAN,<br>　　　　　　　*Plaintiff,*<br>　　v.<br>The CITY OF CARBONDALE, an Illinois municipal corporation, JOHN LENZINI, in his individual and official capacities, and LEONARD JAMIE SNYDER, in his individual and official capacities,<br>　　　　　　　*Defendants.* | Case No.<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff Brandon Hamman, by and through counsel, brings this action for declaratory, compensatory, and injunctive relief in order to vindicate his constitutional and civil rights under the First and Fourteenth Amendments to the U.S. Constitution and Illinois state law.

The City of Carbondale has adopted a policy that prohibits those exercising their constitutional rights from placing temporary signs on the ground through a vague ordinance that fails to specify what manner of speech is permitted and unconstitutionally denies people the chance to speak. The City's ordinance is unconstitutionally vague; moreover, the City has a policy applying the ordinance in an unconstitutional manner, targeting Mr. Hamman on account of the viewpoint of his speech.

### STATEMENT OF THE CASE

1.　Carbondale's written Ordinance regarding temporary signs, on its face, does not categorically prohibit the use of temporary signs at such demonstrations. *See* Carbondale Ordinance § 15.4.10.8 ("the Ordinance") (Exhibit A).

2.　The Ordinance regarding temporary signs provides for 501(c) organizations to obtain permits to display temporary signs. *See* the Ordinance § 15.4.10.8(A)(5)(b)(2).

3. However, Defendant City of Carbondale has employed a pratice that those engaged in constitutionally protected pro-life demonstrations may not use temporary signs.

4. On April 16, 2025, Mr. Hamman was involved in a pro-life demonstration in Carbondale when he was told by Mr. John Lenzini, on the advice and direction of City Attorney, Mr. Jamie Snyder, that Mr. Hamman was not allowed to place any sign on the public grass during his presence at the demonstrations, even when placed twenty feet away from the curb as per the Ordinance.

5. Defendants threatened Mr. Hamman with confiscation of his signs and citation for violation of Carbondale's Ordinance.

6. Mr. Hamman was then prohibited from applying for a permit.

7. This action is brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiff's constitutional rights.

8. Defendants' policies and practices have deprived and will continue to deprive Plaintiff of paramount rights and guarantees under the United States Constitution, under the color of state law.

## JURISDICTION & VENUE

9. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, as protected by the Civil Rights Act, 42 U.S.C. § 1983.

10. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive

relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

12.     This action is also brought under Article I of the Illinois Constitution and the Illinois Religious Freedom Restoration Act ("RFRA"), 775 ILCS 35/1 et seq. Because these ancillary state law claims involve the same parties and arise from the same incident as their federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and division and/or all the acts described in this Complaint occurred within this district.

## THE PARTIES

14.     Plaintiff Brandon Hamman is a pro-life advocate who serves as a missionary, spending his time as a sidewalk counselor.

15.     Defendant City of Carbondale is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of the other defendants.

16.     Defendant John Lenzini is a "Community Development Manager" employed by the City of Carbondale. He threatened Mr. Hamman on April 16, 2025, with citation and confiscation of Mr. Hamman's signs if Mr. Hamman did not remove them. Lenzini is sued in his official and individual capacities.

17.     Defendant Jamie Snyder is the City Attorney of Carbondale and directed and advised Mr. Lenzini when he threatened Mr. Hamman on April 16, 2025. Snyder is sued in his official and individual capacities.

18.     Defendants were at all times material to this Complaint acting under color of law.

**FACTUAL BACKGROUND**

A.  **Carbondale's Ordinance**

19. Carbondale has adopted a comprehensive scheme that regulates public signs.

20. Carbondale § 15.4.10.3(G) provides that, among the list of prohibited signs are "[t]emporary signs, except as allowed by section 15.4.10.8 of this chapter[.]"

21. The Ordinance, § 15.4.10.8, contains certain ambiguous rules regarding the maintenance of temporary signs.

22. The Ordinance, § 15.4.10.8(A)(1), provides that "[n]o sign may be erected on, suspended over, or encroach upon the public right of way, except as provided for under section 17-1-5 of this code (dealing with 'encroachments'), or be located so as to obstruct the visual clearance needed for safe vehicle or pedestrian traffic."

23. The Ordinance itself contains no definition of "right of way."

24. Elsewhere, Carbondale Ordinance § 17-12-2 defines "Right of Way or Rights of Way" as "[a]ny street, alley, other land or waterway, dedicated or commonly used for pedestrian or vehicular traffic or other similar purposes, including utility easements, in which the city of Carbondale has the right and authority to authorize, regulate or permit the location of facilities other than those of the city of Carbondale. 'Right of way' or 'rights of way' shall not include any real or personal city of Carbondale property that is not specifically described in the previous two (2) sentences and shall not include city of Carbondale buildings, fixtures and other structures or improvements, regardless of whether they are situated in the right of way."

25. It is nowhere stated expressly whether § 17-12-2's definition applies to § 15.4.10.8(A)(1).

26. Accordingly, one natural reading of § 15.4.10.8(A)(1) is that signs are permitted in public spaces but not in areas dedicated for pedestrian or vehicular traffic, or if in violation of other provisions under this ordinance.

27. But because § 15.4.10.8(A)(1) does not specify its definition of "right of way," the scope of its prohibition is unclear.

28. § 15.4.10.8(A)(2) also provides that signs may not be attached to certain public items, such as trees on private property or utility poles.

29. § 15.4.10.8(A)(3) prohibits temporary signs within twenty feet of the curb line of an adjoining street. Accordingly, a natural reading of this section is that all temporary signs on public property are allowed if they are further than twenty feet away from the curb and not in violation of other provisions of this ordinance.

30. § 15.4.10.8(A)(5)(a) contains certain requirements for temporary commercial signs and seemingly exempts those used for demonstrations. It "[i]ncludes signs that are carried, waved or otherwise displayed by persons either on public rights of way or in a manner visible from public rights of way. This provision is directed toward such displays intended to draw attention for a commercial purpose, and is not intended to limit the display of banners, flags or other signage by persons participating in demonstrations, political rallies, and similar events." *Id.* § 15.4.10.8(A)(5)(a)(4). However, this exemption is unclear.

31. The Ordinance also includes an exemption that "Each individual 501(c) not for profit organization will be allowed to display a temporary sign for a period not to exceed thirty (30) consecutive days. Each organization is allowed a total of sixty (60) calendar days to display temporary signs. A new permit shall be issued each time the temporary sign is to be displayed.

Permit fees may be waived with the approval of the administrative official." § 15.4.10.8(A)(5)(b)(2).

32. There is no mention in the Ordinance of the method of placement of temporary signs.

### B. Plaintiff Hamman's Demonstration and Subsequent Conduct

33. The facts of this case stem from a confrontation between Mr. Hamman and City officials near the CHOICES Center for Reproductive Health in Carbondale, Illinois, at 600 N Giant City Road on April 16, 2025.

34. Plaintiff is the founder of Gospel for Life, a non-profit organization under the authority of his church, Christ Church Carbondale, a 501(c)3 non-profit organization.

35. Gospel for Life is an organization focused on proclaiming the gospel and providing biblical counsel to women in crisis pregnancies.

36. On April 16, 2025, Plaintiff and other demonstrators were peacefully demonstrating near CHOICES Center for Reproductive Health.

37. At approximately 10:00 a.m., Defendant Lenzini approached Plaintiff while Plaintiff and others were exercising their constitutional rights to demonstrate a sincere religious belief against abortion and said that the signs Plaintiff and others were using in the demonstration were "in violation" according to the City Attorney (Defendant Snyder).

38. Defendant Lenzini was intractable in declaring that signs offering "free baby supplies" were not a constitutionally-protected demonstration.

39. Defendant Lenzini reiterated repeatedly that he had talked to Defendant Snyder and the instructions he provided originated from Defendant Snyder, who had "assured me they can't be there."

40. Defendant Lenzini stated he "just talked to the city attorney and he told me the signs were in violation" and that "free baby supplies is not a demonstration."

41. Plaintiff, disagreeing with Defendant Lenzini's declarations, retrieved other signs from his car that specifically did not offer goods or services but were demonstrative in nature.

42. These additional signs read "we will adopt your baby," "love your preborn neighbor as yourself," and "there may be time to save your baby, abortionpillreversal.com."

43. Plaintiff presented Defendant Lenzini with a written version of Carbondale Ordinance § 15.4.10.8 and the exception for First Amendment activity, such as demonstrations, that is included in the Ordinance, Ordinance § 15.4.10.8(A)(5)(a)(4).

44. Plaintiff further asserted his First Amendment right to public demonstrations, saying, "I am demonstrating against abortion, I have a right to do that."

45. Defendant Lenzini responded, "No, you don't."

46. Defendant Lenzini told Plaintiff that Defendant Snyder ordered Defendant Lenzini to pull up the signs, going so far as to show Plaintiff a text from Defendant Snyder to that effect.

47. Plaintiff, asserting his First Amendment rights and knowledge of the Ordinance, refused to move the signs.

48. At approximately 10:25 a.m., Defendant Lenzini began writing a citation for Plaintiff.

49. At approximately 10:34 a.m., City of Carbondale police officers arrived and told Plaintiff that the signs "can't be in the ground." Police officers further stated that Plaintiff could "hold them and walk around, but I guess they can't be on the easement."

50. Plaintiff responded that, when he approaches a car to talk to or pray for an individual, if he is holding a sign, there is a safety risk in windy conditions as a sign could fly into the street and potentially hit a passing motorist or pedestrian.

51. After further speaking with Carbondale police officers, Plaintiff asked them whether there would be any violation if he moved the signs twenty feet from the curb as per the Ordinance.

52. The officers responded that there would be no violation.

53. Defendant Lenzini told the officers that Defendant Snyder had told him that there are no signs allowed on public property, even when twenty feet from any street or right of way.

54. Defendant Lenzini stated that if the signs were removed, there would be no citation.

55. After consulting with his attorneys, Plaintiff complied by removing the signs, and no citation was issued.

56. On April 17, 2025, Plaintiff, having read the Ordinance, went to Carbondale City Hall to obtain a sign permit for a 501(c)(3) organization to place signs on public property.

57. When Plaintiff arrived, Plaintiff again encountered Defendant Lenzini, who avowed that there was no such permit and that he would not issue a permit to Plaintiff, despite the language in § 15.4.10.8(A)(5)(b)(2) providing for the issuances of temporary permits.

58. Defendant Lenzini asserted that "you can only get a sign permit if you own the property" and "you can carry [the signs] like we told you yesterday."

59. Nothing in Ordinance § 15.4.10.8 states that a 501(c)(3) can only acquire a permit if it is on the 501(c)(3)'s personal property. On the contrary, § 15.4.10.8(A)(5)(b)(3) states the direct opposite: "[t]emporary signs need not be located on the site for which the event is to take place."

60. Plaintiff left Carbondale City Hall with no permit or further direction from the City on how to obtain a permit per the Ordinance.

61. By and through counsel, Plaintiff sent a demand letter on April 22, 2025, demanding written assurances on or before 1:00 pm CDT on April 29th, 2025, that Plaintiff may demonstrate with temporary signs that comply with the requirements set out in Carbondale Ordinance § 15.4.10.8.

62. No response to this letter has been provided.

63. By not responding to this letter, Defendants have adopted an unwritten policy that effectively bans demonstrators like Plaintiff from using temporary signs, despite language in the Ordinance itself that would arguably permit it.

## COUNT I

**Violation of Right to Freedom of Speech Under the First Amendment: Carbondale Ordinance 15.4.10.8 is Facially Unconstitutional and Void for Vagueness**

**(42 U.S.C. § 1983)**

64. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

65. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this claim against Defendants for acting under color of state law to deprive him of his First Amendment right to free speech as guaranteed by the U.S. Constitution.

66. Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and are at the very core of the rights it protects.

67. Plaintiff was engaging in religious and political speech and intended—and still intends—to continue to engage in such speech in public in Carbondale.

68. Plaintiff's speech was on open public land, the kind of area that has been traditionally open to the public.

69. Restricting speech on public land restricts speech in a traditional public forum and accordingly must be justified by the government, without reference to the content of its speech.

70. For an ordinance that restricts speech in a public forum to constitute a valid time, place, manner restriction, it must be narrowly tailored to serve a significant governmental interest, and it must leave open ample alternative channels for communication of the information.

71. The Supreme Court has found that an ordinance which required the holding of a sign rather than staking it to the ground did not leave open sufficient alternative channels for communication and it, therefore, unconstitutionally prohibited speech.

72. The Ordinance is, as evidenced by Defendants' application thereof, so vague as to invite arbitrary enforcement and is impossible for an average citizen to understand what rights or duties are required or restricted.

73. The Ordinance is ambiguous in a variety of key provisions. For example:

   a. § 15.4.10.8(A)(1) contains no definition of "public right of way," leaving, as was made clear by the conduct of Defendants at issue here, it unclear as to whether signs are permitted on some public lands or not;

   b. § 15.4.10.8(A)(1) also fails to specify what it means for a sign to be "erected on" the public right of way;

   c. § 15.4.10.8(5)(a)(4) contains language that "[t]his provision . . . is not intended to limit the display of banners, flags or other signage by persons participating in demonstrations, political rallies, and similar events" without articulating the scope of the exception it creates;

  d. § 15.4.10.8(5)(a)(4) allows non-profit organizations to apply for permits to display temporary signs. It fails to articulate any standard whereby permit requests are reviewed and approved.

74. The vagueness of the Ordinance substantially chills the speech of citizens.

75. The Ordinance's vagueness fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited; for example, ordinary people do not know whether they are allowed to place signs on public land if more than twenty feet from a right of way.

76. The Ordinance's vagueness encourages arbitrary and discriminatory enforcement; for example, no standard is given to regulate how permits must be issued.

77. The Ordinance is thus, on its face, unconstitutional.

78. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## COUNT II

**Violation of Right to Freedom of Speech Under the First Amendment As-Applied: Defendants' Conduct Violated the Ordinance and the Constitution.**

**(42 U.S.C. § 1983)**

79. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

80. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this claim against Defendants for acting under color of state law to deprive him of his First Amendment right to free speech as guaranteed by the U.S. Constitution.

81. Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and are at the very core of the rights it protects.

82. Plaintiff was engaging in religious and political speech, and intended—and still intends—to continue to engage in such speech in public in Carbondale.

83. Plaintiff was threatened with a citation, despite the words of the Ordinance that allows temporary signs beyond twenty feet from the curb or right of way.

84. Upon information and belief, Defendants are engaging in a targeted practice of enforcing their interpretation of the Ordinance against only religious speakers.

85. Viewpoint discrimination strikes at the very heart of the First Amendment.

86. Viewpoint discrimination is an egregious form of content discrimination.

87. The government cannot constitutionally regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

88. Discrimination against speech because of its viewpoint is presumed to be unconstitutional.

89. Defendants have discriminated on the basis of viewpoint, targeting religious viewpoints for suppression that is unjustified by the written text of the Ordinance.

90. Defendants have adopted an unwritten policy of enforcing the ambiguous Ordinance in an aggressive manner towards religious speakers because of the viewpoint of their speech.

91. In particular, rather than interpret the ambiguities in the Ordinance to allow activities more than twenty feet from the curb or right of way, Defendants have used the Ordinance as a tool to discriminate based on viewpoint and ban that speech.

92. Moreover, in a traditional public forum like a right of way, the government may only enforce content-neutral time, place, and manner regulations that are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication.

93. As applied, the Ordinance is neither narrowly tailored nor does it leave open ample alternative channels.

94. Any asserted government interests of keeping the public right-of-way clear and preserving the aesthetics of the community are simply not achieved any less effectively absent the application of the Ordinance in this case.

95. Plaintiff's temporary placement of his signs in the public area around the public sidewalk presented no adverse effects, such as obstruction of pedestrian or automobile traffic.

96. By applying the Ordinance to prohibit Plaintiff's temporary use of the small signs in this case, the City has applied its Ordinance in a manner that is substantially broader than necessary to achieve its interests.

97. The Supreme Court has found that an ordinance which required the holding of a sign rather than staking it to the ground did not leave open sufficient alternative channels for communication and it, therefore, unconstitutionally prohibited speech.

98. Plaintiff continues to suffer irreparable harm because his speech has been chilled out of concern he will be cited if he were to use temporarily staked signs again, even though this manner of speech is protected under the First Amendment.

99. The acts of Defendants would chill a reasonable person from continuing to engage in the constitutionally protected activity of Plaintiff.

100. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against the Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## COUNT III

**Violation of Right to Freedom of Speech Under the First Amendment: As-Applied: Defendants' Conduct Violated the Ordinance and the Constitution.**

**(42 U.S.C. § 1983)**

101. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

102. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this claim against Defendants for acting under color of state law to deprive him of his First Amendment right to free speech as guaranteed by the U.S. Constitution.

103. Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and are at the very core of the rights it protects.

104. Plaintiff was engaging in religious and political speech, and intended—and still intends—to continue to engage in such speech in public in Carbondale.

105. Viewpoint discrimination strikes at the very heart of the First Amendment.

106. Viewpoint discrimination is an egregious form of content discrimination.

107. The government cannot constitutionally regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

108. Discrimination against speech because of its viewpoint is presumed to be unconstitutional.

109. Defendants have discriminated on the basis of viewpoint, targeting religious viewpoints for suppression that is unjustified by the written text of the Ordinance.

110. Defendant Lenzini informed Plaintiff that there was no permitting process available for 501(c) organizations in express contradiction with the Ordinance, which provides for applications for such a permit.

111. Defendants have adopted an unwritten policy of enforcing the ambiguous Ordinance in an aggressive manner towards religious speakers because of the viewpoint of their speech.

112. In particular, the Ordinance expressly allows non-profits to apply for a permit, but Defendants have still refused to allow the Plaintiff to even make an application.

113. Defendant Lenzini discriminated against Plaintiff for his pro-life viewpoint by refusing to provide a permit form as per the Ordinance.

114. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against the Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## COUNT IV

**Violation of Right to Free Exercise of Religion Under the First Amendment**

**(42 U.S.C. § 1983)**

115. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

116. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this claim against Defendants for acting under color of state law to deprive him of his First Amendment right to free exercise of religion as guaranteed by the U.S. Constitution.

117. The First Amendment prohibits the government from impermissibly burdening the free exercise of religion.

118. Defendants' actions substantially burden Plaintiff's sincerely held religious beliefs and expression.

119. Defendants have no compelling government interest for burdening Plaintiff's religious beliefs and expression.

120. Defendants' policy and Defendants' actions in implementing that policy constitute a violation of the First Amendment's protection of religious free exercise.

121. Defendants' policy, as applied against Plaintiff, constitutes a violation of the First Amendment right to free exercise.

## COUNT V

**Violation of Right to Due Process Under the Fourteenth Amendment**

**(42 U.S.C. § 1983)**

122. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

123. The unwritten policy in this case is impermissibly vague in that a person of common intellect must necessarily guess as to what conduct it forbids, its meaning, and differs as to its application and fails to give persons fair warning as to what conduct is forbidden.

124. Plaintiff was threatened with citation and arrest without a continually shifting explanation for the unlawfulness of his conduct.

125. In the end, the Defendants told Plaintiff that no matter what he did, his temporary signs would be prohibited.

126. Furthermore, despite the Ordinance's promise of a permitting process, Defendants later made it clear that Plaintiff could not get any such permit, either for himself or through any affiliated 501(c) organization.

127. Plaintiff was left with absolutely no way of knowing how to comply with the temporary sign Ordinance without simply restricting his own speech.

128. Despite Defendants' refusal to clarify the policy's meaning, they maintained their threat of property seizure and citation against Plaintiff.

129. Defendants furthermore refused to respond at all to Plaintiff's written request for clarification sent through counsel.

130. Based on the foregoing, Plaintiff was denied his right to due process under the Fourteenth Amendment to the United States Constitution.

## COUNT VI

### Violation of Right to Equal Protection Under the Fourteenth Amendment

### (42 U.S.C. § 1983)

131. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

132. The Equal Protection Clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. Put simply, the state must treat all similarly situated persons alike.

133. Defendants have engaged in discrimination based on religious viewpoint, enforcing their written sign ordinance both incorrectly and inequitably.

134. Plaintiff was threatened with seizure of property and arrest and is likely to be subject to future enforcement on the basis of his religious viewpoint.

135. Compared to those who do not express a religious viewpoint, Plaintiff has been and will continue to be selectively mistreated.

136. The selective treatment of Plaintiff is motivated by an intent to discriminate on the basis of impermissible considerations and to punish or inhibit the exercise of First Amendment constitutional rights.

137. This unequal treatment violates the Equal Protection Clause.

## COUNT VII

### Violation of the Illinois Religious Freedom Restoration Act

### (28 U.S.C. § 1367; 775 ILCS 35/15)

138. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

139. Plaintiff's religious convictions compel him to share his faith publicly and demonstrate against abortion.

140. Plaintiff unobtrusively demonstrated against abortion by placing small yard-sign size signs in the ground offering "free baby supplies" and other messages such as "please don't abort your baby" and "love your preborn neighbor like yourself."

141. Plaintiff's right to freely exercise his religion is protected by 775 ILCS 35/15, which states that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

142. Ordering Plaintiff to cease using unobtrusive signs, offering the inadequate substitute of carrying the signs around, substantially burdened his exercise of religion.

143. There was and is no compelling governmental interest in preventing Plaintiff's use of small signs temporarily affixed to the ground.

144. Ordering Plaintiff to carry the signs was and is not the least restrictive means of furthering any governmental interest.

145. Plaintiff is entitled to compensation from the Defendants for the harms he has suffered and continues to suffer as a result of being intimidated, harassed, silenced, and arrested for exercising his faith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Hamman respectfully requests that this Court enter judgment against Defendants and provide Plaintiff the following relief:

A. A declaratory judgment that Carbondale Ordinance § 15.4.10.8 is unconstitutionally vague in violation of the First and Fourteenth Amendments, or, in the alternative, a declaratory judgment that Defendants' policy of prohibiting pro-life speech on signs otherwise allowed constitutes unconstitutional viewpoint discrimination;

B. Injunctive relief prohibiting Defendants, including any of Carbondale's other employees, agents, or representatives, from citing or arresting Plaintiff for his use of temporary signs;

C. Compensatory, or in the alternative, nominal damages for violation of Plaintiff's First and Fourteenth Amendment rights and for violation of Plaintiff's rights under

       the Illinois RFRA, including damages arising from his harassment, intimidation, and threatened citation by Defendants;

D.     Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;

E.     All other further relief to which Plaintiff may be entitled.

Respectfully submitted,

*[signature: Kelsey E. McGee]*

By: /s/ Kelsey E. McGee\*
Kelsey E. McGee
Stuart J. Roth\*\*
Nathan J. Moelker\*\*
Liam R. Harrell\*\*
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Tel: (202) 641-9160
Fax: (202) 546-9309
Email: kmcgee@aclj.org;
nmoelker@aclj.org;
lharrell@aclj.org

*Counsel for Plaintiff*

\*Admitted to this Court's General Bar
\*\* Pro Hac Vice Applications Forthcoming