IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *BRANDON HAMMAN,* | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 3:25-cv-00736 |
| *The CITY OF CARBONDALE, an Illinois municipal corporation, JOHN LENZINI, in his individual and official capacities, and LENOARD JAMIE SNYDER in his individual and official capacities,* | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**[1]

**INTRODUCTION AND BACKGROUND FACTS**

This case involves a dispute over the display of demonstration signs in front of an abortion clinic in Carbondale, Illinois. Plaintiff alleges he was attempting to display anti-abortion related signs in front of the abortion clinic by staking them in the public right-of-way. Carbondale, through police and city officials, advised Plaintiff his signs staked into the ground violated Carbondale's signage ordinance (the "Ordinance"). (15.4.10 of the Carbondale Revised Code). Carbondale informed Plaintiff that he was permitted to walk around while holding the signs but was not permitted to stake them in the ground. Plaintiff alleges the Ordinance itself is unconstitutional on its face and that, as it is applied, it is unconstitutional. Plaintiff also makes allegations related to a

---

[1] The caption, as filed by Plaintiff, misspells Mr. Snyder's first name as "Leonard." His name has been corrected in the caption above to its proper spelling, "Lenoard."

40133697.v2

portion of the Ordinance referring to temporary signs allowed on private property by permit.[2]

On May 8, 2025, Plaintiff filed his Motion for Preliminary Injunction and Incorporated Memorandum of Points and Authorities in Support ("Plaintiff's Motion" or "Motion for Preliminary Injunction"), requesting this Court prohibit Defendants from enforcing the Ordinance against Plaintiff's allegedly protected speech activities. Plaintiff's Motion fails to establish he is entitled to the requested relief and should be denied.

## ARGUMENT

**I.    Plaintiff's Underlying Complaint is Not Likely to Succeed on the Merits.**

In order to obtain a preliminary injunction, the moving party must establish four things: (1) likelihood of success on the merits, (2) likelihood of suffering irreparable harm, (3) balance of equities, and (4) public interest. *Higher Society of Indiana v. Tippecanoe County, Indiana*, 858 F.3d 1113, 1116 (7th Cir. 2017). Plaintiff has not met any of these requirements.

In the First Amendment context, the likelihood of success on the merits is often the determinative factor. *Id.*; *see also Green v. U.S. Dept. of Just.*, 54 F.4th 738, 745 (D.C. Cir. 2022) (citations omitted). Plaintiff has not established he is likely to succeed on the merits because, as explained below, the Ordinance is constitutional on its face, constitutional in application, and the Ordinance does not allow even temporary permits to be issued allowing any signage to be placed on public rights-of-way.

---

[2] Plaintiff's arguments, at times, appear to conflate different parts of the Ordinance. For example, he alleges that the temporary sign provision (15.4.8.10) in the Ordinance applies to temporary signs on public rights-of-way, but it does not. That particular part of the Ordinance refers only to temporary signs on *private property*. He also makes reference to a portion of the Ordinance requiring a twenty-feet set back from the curb line (15.4.10.8(A)(3)), but this too applies only to private property, with exceptions for BPR district signs (BPR is a zoning designation that refers to locations where "primary businesses" are located, and none of incidents alleged in Plaintiff's Complaint took place in a BPR district).

40133697.v2

### A. Carbondale's Signage Ordinance is Plainly Constitutional.

The Ordinance is plainly constitutional under well-established First Amendment principles. The general rule is that even in a traditional public forum like a public right of way or sidewalk, a restriction that is content neutral and narrowly tailored to serve a significant government interest and that leaves open ample alternative avenues of communication will be constitutional. *Constr. & Gen. Laborers' Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120, 1122-23 (7th Cir. 2019). Such restrictions are often referred to as time, place, and manner restrictions because they regulate the way speech is presented rather than regulating the content of the speech itself. *See Leibundguth Storage & Van Service, Inc. v. Village of Downer's Grove, Illinois*, 939 F.3d 859, 862 (7th Cir. 2019) ("A limit on the size and presentation of signs is a standard time, place, and manner rule, a form of aesthetic zoning.").

Application of this general rule has led the Seventh Circuit to conclude and hold a municipality is entitled to implement a nondiscriminatory ban on all private signs from public roads and public rights-of-way. *Grand Chute*, 915 F.3d at 1123; *see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984) (holding an ordinance prohibiting posting of signs on public property was constitutional). This is precisely what the Ordinance at issue does. Indeed, the Ordinance constitutes an essentially total ban on all signs in the public right-of-way and does not even allow such signs via temporary permit application. The Ordinance does not allow *any* signs to be placed in the public right-of-way, with or without a permit.[3]

---

[3] The Ordinance provides that signs may not be erected on, suspended over, or encroach upon the public right-of-way, except as provided by 17-1-5 of the municipal code. Plaintiff makes no arguments related to 17-1-5 of the code, nor are the provisions in that portion of the code relevant to the instant dispute.

15.4.10.8(A)(1) of the Ordinance is extremely clear: "*No sign may be erected on, suspended over, or encroach upon the public right of way[.]*" Other portions of the ordinance, including but not limited to 15.4.10.9(A)(1) and 15.4.10.9(F)(3), reiterate this total ban and make clear that temporary signs, like the ones used by Plaintiff, are not permitted on public rights-of-way.

The Seventh Circuit in *Grand Chute* analyzed a nearly identical signage ordinance and determined the ordinance at issue was constitutional. *Grand Chute*, 915 F.3d at 1122-23. In *Grand Chute*, the court came to this conclusion in a dispute related to the display of a large inflatable rat by a local union. *Id.* at 1125-26. The *Grand Chute* case is essentially identical to the instant dispute, and the arguments addressed in that case are largely the same as those raised by Plaintiff herein. Accordingly, the *Grand Chute* case serves as a template and a guide throughout this Response.

*Content-Neutrality*

As previously noted, "content-neutrality" is one of the key prongs analyzed in determining constitutionality of a speech restriction in a traditional public forum. *Id.* at 1122-23. A restriction is generally content based (and not content neutral) where those enforcing it must examine the content of the message to determine whether a violation has occurred. *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984). When determining whether a law is content based or content neutral, courts look to the government's purpose in creating and enforcing the law. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Here, as previously established, the Ordinance creates a total ban on signs in the public right-of-way.[4] To the extent Plaintiff argues otherwise, the Supreme Court has made clear that even if a signage restriction requires review of the content of the sign to determine if it applies,

---

[4] Again, any possible exceptions to the clear language of the Ordinance are not argued by Plaintiff.

that does not make it content based. *See, e.g., City of Austin v. Reagan National Advertising of Austin, LLC*, 142 S.Ct. 1464, 1471 (holding that a regulation of signs is not automatically content based merely because to apply the regulation, a reader must ask who is speaking and what the speaker is saying); *see also Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."). Just like the restrictions in *City of Austin*, the Ordinance herein is "agnostic" as to content, and is therefore also not viewpoint or content based. *City of Austin*, 142 S.Ct. at 1471.

In his Motion for Preliminary Injunction, Plaintiff does not even appear to clearly dispute that the ordinance itself is content neutral. Plaintiff only argues that it is *applied* in a viewpoint-based manner, which is discussed more fully below. Either way, the Ordinance mandates that signs may not be affixed to or encroach upon the public right-of-way, regardless of the content of the signs or the identity of the speaker.

<u>Narrow Tailoring to Significant Government Interests</u>

In *Grand Chute*, the court noted the municipality's ordinance was narrowly tailored to meet the public purpose of banning signs obstructing vision or distracting drivers. *Id.* at 1125-26. Courts analyzing similar ordinances have regularly found that traffic and pedestrian safety, as well as community aesthetics, are considered "significant government interests" which an ordinance may properly seek to address. *See, e.g., Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 979 (9th Cir. 2009); *Metromedia v. City of San Diego*, 453 U.S. 490, 507-08 (1981).

Here, the City of Carbondale asserts the exact same public interests as justification for the Ordinance. (Lenzini Declaration). The Ordinance itself clearly details these justifications in 15.4.10.2 as follows:

    A.    To preserve, protect and promote the public safety on city streets by limiting the unnecessary distraction of the motorist caused by signs.

    B.    To protect the general public from damage and injury which may be caused by the faulty and uncontrolled construction and use of signs within the city.

    C.    To create a fair and balanced system of sign regulations recognizing both the needs of the business community and the desires of the citizenry for a reduction of sign confusion.

    D.    To preserve and protect the property values of the city's residential neighborhoods by protecting these areas' visual character from the blighting effects of uncontrolled signs.

As such, the Ordinance is clearly crafted to preserve significant government interests well-established by precedent.

The Ordinance is also clearly narrowly tailored. At the district court level in *Grand Chute*, the court found the statute was narrowly tailored because the ban on signs was applied "in an evenhanded manner and without regard to content of the message or the identity of the speaker." *Constr. & Gen. Laborers' Local Union No. 330 v. Town of Grand Chute*, 297 F. Supp. 3d 850, 865 (E.D. Wis. 2018), *aff'd in part, vacated in part, remanded sub nom. Constr. & Gen. Laborers' Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120 (7th Cir. 2019).

As discussed more fully below, there is no evidence the Ordinance herein was not applied in an evenhanded manner. Moreover, the Ordinance is content neutral because it bans all signs on public rights-of-way without regard to the speaker or the content of the message. Despite this, Plaintiff appears to argue that because the Ordinance could be less restrictive or more narrowly

40133697.v2

tailored, i.e., perhaps by allowing signs to be staked in the ground for brief periods of time while he talks to people in their cars, it is unconstitutional.

Plaintiff's argument has no basis in First Amendment jurisprudence. The Supreme Court has made clear the requirement of narrow tailoring does not demand the most restrictive means possible. *See Hill v. Colorado*, 120 S. Ct. 2480, 2482 ("When a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal."); *see also Town of Grand Chute*, 915 F.3d at 1126.

Carbondale narrowly tailored the Ordinance to significant government purposes, which supports the conclusion that it is constitutional.

<u>*Alternative Means of Communication*</u>

Where alternative means of communication are available, a content-neutral restriction on speech is more likely to be constitutional. *Grand Chute*, 297 F. Supp. at 866. In this case, reasonable alternative means of communication are available under the Ordinance, and not only was Plaintiff advised of these alternative means at the time of the incident in question (i.e. walking on the sidewalk holding the signs), the evidence demonstrates others present with Plaintiff chose to use the alternative means of communication and made use of the public right-of-way to freely express their message and exercise their First Amendment rights without incident and without safety issues.

At the district court level in *Grand Chute*, the court noted that, despite the plaintiff's argument that the suggested alternative means may pose safety concerns, the fact was that there were still other effective avenues for communication available. *Id.* The court specifically stated that the "Union [was] free to depict the rat in handheld signs, by using smaller rat balloons that are

not staked to the ground, by having a member wear a rat or a cat costume." *Id.* These reasonable alternatives suggested and approved in *Grand Chute* are the same reasonable alternatives available to Plaintiff and all other similarly situated citizens in the instant case.

Indeed, as evidenced by Plaintiff's own body camera footage, Plaintiff was informed he was allowed to carry his signs but was not permitted to stick them in the public right-of-way. Other protestors present with Plaintiff at the time of the incident referenced in the Complaint were safely carrying their signs without incident. Lenzini's Declaration further makes clear that Plaintiff could have worn the sign (i.e., like a sandwich board) or carried his sign without violating the Ordinance. There is no serious dispute that the Ordinance, in accordance with the First Amendment, allowed the *carrying* of signs on public rights-of-way. For this reason, there were reasonable alternative means of communication available to Plaintiff permitted by the Ordinance.

### B. Carbondale's Signage Ordinance is Enforced and Applied in a Constitutional Manner.

In his Motion for Preliminary Injunction, Plaintiff mistakenly asserts that even if the Ordinance is content neutral, it is applied in a discriminatory, content or viewpoint-based manner. While it is true that even a content-neutral ordinance may violate the First Amendment if it is selectively enforced, Plaintiff provides insufficient evidence herein to support such an assertion.

In making this argument, Plaintiff relies on haphazardly taken photographs of signs purported to be in the public-right-of-way. However, the photographs lack the necessary context and information to determine whether they actually depict signs in violation of the Ordinance. First, the photographs do not include location descriptions, so it is entirely possible some of the photographed signs are not even located in Carbondale's jurisdictional limits. Some of the signs pictured—in particular, a sign promoting a "Fish Fry"— appear to be outside of the public right-of-way and, therefore, not subject to the same portions of the Ordinance at issue in this dispute.

40133697.v2

Additionally, the photographs do not depict the timing of the sign placement, so it is entirely possible that the signs had been placed in their respective locations shortly before the photograph was taken such that the city did not yet have an opportunity to remove them.

Most importantly, it is the City of Carbondale's practice to remove all signs in violation of the Ordinance when they are noticed. (Lenzini Declaration). If a citizen reports a sign in violation of the Ordinance, city officials respond promptly to each complaint without discriminating based on content. (Lenzini Declaration). Defendants acknowledge that they may not track down every illicit sign as soon as it appears (or at all), but courts have not found inadvertent failures to find every single unauthorized sign to be a basis for finding an ordinance unconstitutional as applied. The City of Carbondale's practice is to investigate all citizen complaints about signs and pull any violating signs when noticed, and there is absolutely no indication or evidence herein that city officials selectively pick and choose which citizen complaints to investigate or which signs to pull.

Plaintiff in *Grand Chute* advanced the same argument. *Grand Chute*, 915 F.3d at 1123. In *Grand Chute*, the plaintiff union officials photographed other signs within the town that allegedly did not comply with the signage ordinance, and the city official in charge admitted that he may not have "ferreted out every non-compliant sign on a public right-of-way in the Town." *Id.* at 1125. This, along with testimony from city officials addressing their policy of removing all signs when noticed, was enough for the district court to conclude that the municipality did not discriminate on the basis of content through selective enforcement. *Id.* at 1125-26.

Just like in *Grand Chute*, Plaintiff's photographs are not enough to establish the Ordinance is selectively enforced. John Lenzini's Declaration makes clear, as in *Grand Chute*, that even though it may not "ferret out" every single non-compliant sign, Carbondale's practice is to do its best to remove all such signs regardless of content.

C. **Plaintiff's Arguments Regarding Issuance of a Temporary Permit are Irrelevant.**

Throughout his Motion for Preliminary Injunction, Plaintiff makes repeated reference to a provision in the Ordinance, 15.4.10.8, related to obtaining a permit for temporary signs, arguing that he went to City Hall to obtain such a permit. (Page 4). Plaintiff claims this portion of the ordinance vests unbridled discretion in city officials to make determinations about who receives a permit. However, Plaintiff misstates the content of the Ordinance.

The Ordinance, at 15.4.10.8, addresses temporary signs permitted only on *private property*. To be sure, when a person or entity applies for a permit under this portion of the ordinance, a condition of approval is that "[s]igns shall be erected entirely on private property" and "[s]igns shall conform to Section 15-4-10 of the Carbondale Revised Code." Samples of permits issued under the Ordinance are attached hereto as **Exhibit A**. Plaintiff also refers to a provision (15.4.10.8(A)(5)(b)(2)) related to temporary permits for 501(c) organizations. Again, this provision only allows temporary permits to be issued for private property. The permits attached in Exhibit A were issued to 501(c) organizations under the Ordinance. The incident referenced by Plaintiff in his Complaint did not occur on private property but instead occurred in a public right-of-way; therefore, Plaintiff's arguments on this point are irrelevant.

The City of Carbondale does not issue permits to anyone, including a 501(c), to display a sign in a public right-of-way. Neither of the above provisions are at issue in this dispute because Plaintiff was displaying his signs on a public right-of-way, and the Ordinance does not allow placement of signs on a public right-of-way via permit.

However, even if the exception for 501(c) organizations applied to public property, Plaintiff lacks standing to raise this argument. It is well established that in the First Amendment context, one need not actually apply for a permit to have standing. *Freedman v. State of Md.*, 380

40133697.v2

U.S. 51, 56 (1965); *Kissick v. Huebsch*, 956 F. Supp. 2d 981, 990 (W.D. Wis. 2013). However, the standing inquiry is still applicable, and a Plaintiff must at least be part of the group to which the ordinance could apply.

For example, the Supreme Court in *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988) noted that, in the First Amendment context, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, *one who is subject to the law* may challenge it facially without the necessity of first applying for, and being denied, a license." (emphasis added). This makes clear that to have standing one must at least be "subject to" the law at issue. Although Plaintiff's Motion (Pages 1-2) and Complaint (Paragraph 34) allege his ministry operates under the authority of Christ Church Carbondale, Plaintiff's Motion and Complaint fail to actually allege he is acting directly on behalf of a 501(c) organization such as Christ Church Carbondale. Plaintiff is therefore not subject to the portion of the Ordinance allowing temporary permits for such organizations.

Because the Ordinance only allows temporary permit applications for signs on private property, Plaintiff's arguments as to these provisions are irrelevant. Even if Plaintiff could apply for a temporary permit on behalf of a 501(c) organization, he does not have standing to do so.

II.     **Plaintiff Does Not Sufficiently Allege the Other Elements Necessary to Obtain a Preliminary Injunction.**

   A.     **Plaintiff Fails to Allege Irreparable Harm.**

Plaintiff has likewise failed to meet his burden to show he will suffer irreparable harm should his Motion for Preliminary Injunction be denied. As previously noted, Plaintiff has reasonable alternative means of communication. During the pendency of this litigation, Plaintiff and those individuals with Plaintiff are free to carry or wear signs in the public right-of-way, as they did even on the date of the incident referenced in the Complaint. Most importantly, since

Plaintiff has failed to sufficiently allege a constitutional injury, there is no risk of irreparable harm. As previously noted, the likelihood of success on the merits is generally dispositive in the First Amendment context. *Higher Society of Indiana v. Tippecanoe County, Indiana*, 858 F.3d 1113, 1116 (7th Cir. 2017).

      **B.**    **The Balance of Harms and Public Interest Favors Defendants**

As an initial matter, where the government is a party, as here, the public interest and balance of harms factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As already established, Plaintiff has not sufficiently alleged a constitutional violation. As such, Plaintiff's alleged injuries do not outweigh the City of Carbondale's significant government interests in pedestrian safety and city aesthetics, and the government's stated interests should be upheld. Should Plaintiff's Motion be granted, traffic accidents and aesthetic clutter will be more likely to occur while the Ordinance is unable to be enforced.

## CONCLUSION

Plaintiff has failed to meet the threshold elements necessary to entitle him to injunctive relief. Most importantly, Plaintiff has not and cannot demonstrate a reasonable likelihood of success on the merits in that the Ordinance is constitutional on its face, constitutional in application, and does not permit temporary signs to be placed within public rights-of-way. For these reasons, Plaintiff's Motion should be denied.

WHEREFORE, Defendants City of Carbondale, John Lenzini (in his individual and official capacity), and Lenoard Jamie Snyder (in his individual and official capacity) request this Honorable Court deny Plaintiff's Motion for Preliminary Injunction and grant Defendants any and all other relief as this Court deems just and proper.

40133697.v2

SANDBERG PHOENIX & von GONTARD P.C.

By: /s/ A. Courtney Cox
A. Courtney Cox, #6182590
John L. Gilbert, #954101
Philip J. Lading, #6271659
101 W. Vandalia Street, Suite 300
Edwardsville, IL 62025
618-659-9861
618-659-9862 (Fax)
Email: ccox@sandbergphoenix.com
Email: jgilbert@sandbergphoenix.com
Email: plading@sandbergphoenix.com

*Attorneys for Defendants*
*City of Carbondale, an Illinois municipal corporation, John Lenzini, in his individual and official capacities, and Lenoard Jamie Snyder in his individual and official capacities*

**Certificate of Service**

The undersigned certifies that on the 10th day of June 2025 the foregoing was filed electronically with the Clerk of the Court and was served upon all counsel of record via the court's electronic service to the following:

Kelsey E. McGee
Stuart J. Roth
Nathan J. Moelker
Liam R. Harrell
American Center for Law & Justice
P.O. Box 90555
Washington, DC 2009-0555
kmcgee@aclj.org;
sroth@aclj.org
nmoelker@aclj.org;
lharrell@aclj.org;
*Counsel for Plaintiff*

/s/ A. Courtney Cox

40133697.v2