UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON HAMMAN,<br><br>*Plaintiff,*<br><br>v.<br><br>The CITY OF CARBONDALE, an Illinois municipal corporation, JOHN LENZINI, in his individual and official capacities, and LENOARD JAMIE SNYDER, in his individual and official capacities,<br><br>*Defendants.* | Case No. 3:25-cv-00736-NJR<br><br>**Chief Judge Nancy J. Rosenstengel** |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Brandon Hamman, by and through counsel, submits this reply in support of his motion for a preliminary injunction. (Doc. 8). Defendants' brief in response suffers from two fundamental flaws: (1) Defendants completely ignore Plaintiff's primary argument against Carbondale's sign ordinance, thereby conceding its overbreadth and vagueness; and (2) Defendants rely on inapposite cases that do not address the lack of narrow tailoring here.

**I.    The Ordinance is either fatally overbroad or fatally vague.**

Plaintiff's primary argument is that the Ordinance is either unconstitutionally overbroad or vague. (Doc. 8 at p. 7–12). Defendants evade this argument entirely, addressing neither issue. By failing to address Plaintiff's core argument, Defendants have waived that issue and Plaintiff is likely to succeed on the merits of this First Amendment claim. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Rather than refuting, Defendants confirm Plaintiff's vagueness argument.

A public patch of grass, "twenty feet from the curb line," where Plaintiff's signs were placed,

is *not* a "right of way," as Defendants maintain. (Doc. 17 at p. 12–13). Defendants' argument that it is constitutional to ban signs in the "right of way" is therefore nonresponsive to Plaintiff's argument. (*Id.* at 2–8). Indeed, rather than define "public right of way," as that term is used in § 15.4.10.8(A)(1), Defendants seem to claim that *all public property* constitutes a "public right of way." That claim cannot possibly be true. First, there is a clear legal distinction between a "public right of way" and "public property." "Public right of way" is "[t]he right of passage held by the public in general to travel on roads, freeways, and other thoroughfares," *Right of Way*, *Black's Law Dictionary* (12th ed. 2024) (subentry "Public Right of Way"), while "public property" more broadly means "State- or community-owned property not restricted to anyone individual's use or possession." *Property, Black's Law Dictionary* (12th ed. 2024) (subentry "Public Property").

Second, Carbondale's Code of Ordinances repeatedly makes use of the term "public property." *See, e.g.*, § 5-2-1 (regulating advertising on "public property"); § 2-5-5 (regulating possession and consumption of alcohol on "public property"). If Carbondale intended to forbid temporary signs on all public property, instead of only in "the public right of way," as § 15.4.10.8(A)(1) says, it would have used the term "public property," as it does on other areas of its Code of Ordinances. In addition, a prohibition of signs attached to "trees on public right of way," § 15.4.10.8(A)(2), makes no sense if the Ordinance bans all signs on public property.

If all public property constitutes a "public right of way," the Ordinance would be patently overbroad, covering numerous traditional public fora. As for any limiting interpretation, Defendants cannot apply an unknowable standard to Plaintiff. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000). The lack of definition in the Ordinance, which nowhere defines "public right of way" vis-à-vis temporary signs, combined with Defendants' refusal to provide an interpretation grounded in the text of the Ordinance, demonstrates the vagueness of the Ordinance.

Defendants muddy the waters further, stating that a "Fish Fry" sign (seemingly closer to the

roadway than Plaintiff's signs) is apparently *outside* the public "right of way." (Doc. 17 at p. 8). Neither Defendants' response nor the Lenzini Declaration explain how Plaintiff's small temporary signs, placed on public property twenty feet away from the curb, are inside an undefined "public right of way" and are therefore forbidden. Defendants also omit any mention of § 17-12-2, raised in Plaintiff's Complaint (Doc. 1) and preliminary injunction motion (Doc. 8), an ordinance that provides a narrow definition of public right of way. Defendants nowhere define "right of way" or how their understanding of that term comports with the legal definition. *See Right of Way*, *Black's Law Dictionary* (12th ed. 2024) (subentry "Public Right of Way"). Finally, common sense dictates that "public right of way," a legal term of art based on common law, is not synonymous with or equivalent to "public property." *Property, Black's Law Dictionary* (12th ed. 2024) (subentry "Public Property").

Moreover, Defendants confusingly claim that the Ordinance provides that "[s]igns shall be erected entirely on private property." (Doc. 17 at p. 10) ("The Ordinance, at 15.4.10.8, addresses temporary signs permitted only on *private property*."). The Ordinance, however, says no such thing. The words "private property" are found nowhere in the text of the Ordinance itself. Rather, this sentence is found only in the permit provided by the City in its Exhibit A. The "private property" restriction the City includes in approved permits does not and cannot change the words of the Ordinance itself. This absent language and Defendants' interpretation of it heightens the vague nature of the Ordinance.

Rather than admit that Plaintiff's signs were targeted for the content of their message, made obvious by how the Ordinance was enforced against Plaintiff, Defendants insist on a mercurial definition of the Ordinance's geographic scope. A sign very near the street advertising a fish fry is apparently outside the public right of way, while Plaintiff's signs placed far away from a road or sidewalk are apparently within it. Because Plaintiff lacks any guidance as to where the public right of way starts or stops, his speech has been chilled. Either the Ordinance bans all signs on any public

property—and is egregiously overbroad—or Plaintiff is left without any guidance as to where he can place his signs and the Ordinance is egregiously vague. Both outcomes are unconstitutional.

**II.     Reliance on the *Scabby* cases is misplaced.**

The parties agree that a content-neutral time, place, manner restrictions must be narrowly tailored to serve a significant government interest and leave open ample alternative avenues of communication. Defendants rely heavily on the *Scabby* cases involving the "giant, inflatable balloon, available in sizes from 6 to 25 feet tall" that substantially obstructed traffic visibility. *Constr. & Gen. Laborers' Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120, 1121 (7th Cir. 2019). Given the rat balloon's twenty-five-foot stature and placement on a street median, it is absurd to say the "*Grand Chute* case is essentially identical to the instant dispute." (Doc. 17 at p. 4). While it is true that the Seventh Circuit concluded that a statute similar to the Ordinance in this case "was narrowly tailored to meet its stated purpose—the banning of anything on the public right-of-way that might obstruct vision or distract passing drivers," *Town of Grand Chute*, 915 F.3d at 1126, the analysis does not end there.

First, while there is much discussion in *Town of Grand Chute* of whether the large inflatable rodent fit the definition of a "sign," no party contested that the rat had been placed in the "public right of way." The Union placed the rat on a median between a main road and a service road. Those facts are inapplicable here. While Plaintiff himself was near a street, he was told to remove his signs that were *at least twenty feet from the curb line*. (Doc. 17 at p. 4). At that location, Plaintiff's signs were in the middle of a small grassy area, well outside of any pedestrian or vehicular pathways, and posed no visual obstruction to traffic.

Second, this is an as-applied analysis. Defendants' interpretation of their Ordinance, which remains unclear, seemingly prohibits even a small sign placed in the center of a grass field—despite the sign being neither in a median, nor obstructing drivers' sight lines, nor permanently affixed to the

ground. Under a narrow tailoring analysis, "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). As the Supreme Court has emphasized, "A complete ban can be narrowly tailored but only if **each** activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz,* 487 U.S. 474, 485 (1988) (emphasis added). Here, the City's interest in preventing obstruction does not align with Plaintiff's unobtrusive signs, rendering this case parallel to *Tucker v. City of Fairfield*, 398 F.3d 457, 460 (6th Cir. 2005), as discussed in Plaintiff's motion.

### III. Defendants targeted Plaintiff for the content of his speech.

Assuming arguendo the Ordinance is neutral on its face, it has not been applied in a content-neutral fashion. Plaintiff has documented individual signs on public rights of way. His affidavit states that these signs were "throughout the city" (Doc. 8-1), and he likewise observed that these signs had not been removed, constituting substantial evidence of unequal enforcement. Defendants argue the photographs lack "context," but it is Defendants who bear the burden of demonstrating uniform enforcement. The photographs create a prima facie case of selective enforcement which Defendants have not rebutted.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court issue a preliminary injunction prohibiting Defendants from enforcing the challenged ordinance against Plaintiff's protected speech activities in a public forum.

Respectfully submitted,

*s/ Nathan J. Moelker*
Nathan J. Moelker
Christina A. Compagnone*
Liam R. Harrell
Kelsey E. McGee
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002

Tel: (202) 641-9160
Fax: (202) 546-9309
Email: nmoelker@aclj.org
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2025, I caused a copy of the foregoing Plaintiff's Reply in Support of Plaintiff's Motion for a Preliminary Injunction to be e-filed using the CM/ECF e-filing system which will serve all parties of record.

*/s/ Nathan J. Moelker*
Nathan J. Moelker
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel: (202) 641-9160
Fax: (202) 546-9309
Email: nmoelker@aclj.org

*Counsel for Plaintiff*