## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| *BRANDON HAMMAN,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:25-cv-00736 |
| | ) | |
| *The CITY OF CARBONDALE, an* | ) | |
| *Illinois municipal corporation, JOHN* | ) | |
| *LENZINI, in his individual and official* | ) | |
| *capacities, and LENOARD JAMIE* | ) | |
| *SNYDER in his individual and official* | ) | |
| *capacities,* | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANT CITY OF CARBONDALE'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant City of Carbondale ("Defendant" or "Carbondale"), by and through its attorneys Sandberg Phoenix & von Gontard P.C., pursuant to Federal Rule of Civil Procedure 56, and respectfully moves this Court to enter judgment as a matter of law against Plaintiff on all claims, and in support hereof states as follows:

### THE CLAIMS

Plaintiff brings seven (7) claims against Defendant in his Complaint. Counts I-VI, listed in order below, are alleged under 42 U.S.C. § 1983. [Doc. 1] ("Compl.")

1.  <u>Violation of Right to Freedom of Speech Under the First Amendment: Carbondale Ordinance 15.4.10.8 is Facially Unconstitutional and Void for Vagueness.</u> Plaintiff alleges that Carbondale's signage ordinance (Carbondale Revised Code Section 15.4.10, et. seq.) (the "Ordinance") is unconstitutional under the First Amendment and infringes on his right to free

40297362.v1

speech. (Compl. ¶ 65). Plaintiff alleges that the Ordinance impermissibly restricts speech in a public forum and is ambiguous/vague, making it unconstitutional. (Compl. ¶¶ 69-77).

2.    <u>Violation of Right to Freedom of Speech Under the First Amendment As-Applied: Defendants' Conduct Violated the Ordinance and the Constitution.</u> Plaintiff alleges that the Ordinance was applied in such a way as to "target" only religious speakers. (Compl. ¶ 84). Plaintiff alleges that this constitutes unconstitutional viewpoint discrimination. (Compl. ¶¶ 85-90).

3.    <u>Violation of Right to Freedom of Speech Under the First Amendment: As-Applied: Defendants' Conduct Violated the Ordinance and the Constitution.</u> Plaintiff again alleges that the Ordinance discriminates based on viewpoint. (Compl. ¶¶ 105-109). Plaintiff alleges specifically that the Ordinance was applied unconstitutionally when Defendant Lenzini allegedly advised Plaintiff there was no permitting process available for temporary signs on the public right-of-way. (Compl. ¶¶ 110, 112-113).

4.    <u>Violation of Right to Free Exercise of Religion Under the First Amendment.</u> Plaintiff alleges that Defendants impermissibly burdened Plaintiff's free exercise of religion and had no compelling government interest for doing so. (Compl. ¶¶ 116, 119-121).

5.    <u>Violation of Right to Due Process Under the Fourteenth Amendment.</u> Plaintiff alleges that the Ordinance is impermissibly vague "in that a person of common intellect must necessarily guess as to what it forbids[.]" (Compl. ¶ 123). Plaintiff ultimately alleges that Plaintiff was "left with no way of knowing how to comply with the [display and permitting portions of the] Ordinance without simply restricting his own speech." (Compl. ¶¶ 124-127).

6.    <u>Violation of Right to Equal Protection Under the Fourteenth Amendment.</u> Plaintiff alleges that Defendants engaged in impermissible viewpoint discrimination by enforcing the Ordinance "inequitably." (Compl. ¶ 133). Plaintiff alleges that he was subjected to "selective

40297362.v1

treatment . . . motivated by an intent to discriminate on the basis of impermissible considerations." (Compl. ¶ 136).

7.    <u>Violation of the Illinois Religious Freedom Restoration Act.</u> Plaintiff alleges that his religious convictions compel him to share his faith publicly and that Defendants failed to offer an adequate substitute for staking the signs in the right of way. (Compl. ¶¶ 139, 142). Plaintiff alleges that Defendants had no compelling governmental interest in preventing Plaintiff's activity. (Compl. ¶ 143).

## STATEMENT OF MATERIAL FACTS

1.    This case involves a dispute over the display of demonstration signs in front of an abortion clinic in Carbondale, Illinois. (Compl. ¶ 4).

2.    On April 16, 2025, Plaintiff was attempting to display anti-abortion related signs in front of the abortion clinic by staking them in the public right-of-way. (Compl. ¶¶ 4, 33, 36).

3.    At that time, the City of Carbondale, through police and city officials, including Defendants Lenzini and Snyder, advised Plaintiff his signs staked into the ground violated the Ordinance. (Compl. ¶¶ 4, 37).

4.    Defendant Lenzini, the Community Development Manager, on advice from Defendant Snyder, the City Attorney, informed Plaintiff that he was not permitted to stake the signs in the right-of-way. (Compl. ¶¶ 16, 37-40, 45-46).

5.    Plaintiff was informed that he was permitted to walk around while holding the signs instead. (Compl. ¶ 49).

6.    After some back and forth between Plaintiff, police officers, and Lenzini, Plaintiff eventually removed the signs and no citation was issued. (Compl. ¶¶ 49-55).

40297362.v1

7.      Plaintiff and others present at the time of the incident continued, without incident, to exercise their First Amendment rights thereafter by *holding* their signs and walking around with them. [Doc. 17-1, ¶ 6] ("Lenzini Declaration").

8.      The events of April 16, 2025 occurred entirely on the public right-of-way, as evidenced by City of Carbondale site plan drawing and photographs from the location of the incident. (Lenzini Declaration, ¶ 7) (Second Lenzini Declaration, ¶ 3-7).

9.      The next day, on April 17, 2025, Plaintiff came to Carbondale's City Hall to attempt to obtain a temporary signage permit meant for 501(c) organizations. (Compl. ¶ 56).

10.     Plaintiff claims that he is a "founder" of Gospel for Life, a non-profit organization under the authority of his church, Christ Church Carbondale, a 501(c) non-profit organization. (Compl. ¶ 34).

11.     Defendant Lenzini was present at City Hall on April 17, 2025 and told Plaintiff that such a permit did not exist, and Plaintiff ultimately did not obtain a permit. (Compl. ¶¶ 57-58, 60).

12.     15.4.10.8(A)(1) of the Ordinance states clearly that "[n]o sign may be erected on, suspended over, or encroach upon the public right of way[.]" (Compl. ¶ 22) (Lenzini Declaration, ¶ 9).

13.     The Ordinance has been adopted for the dual purposes of pedestrian and traffic safety, as well as to maintain the visual character of the city. (Lenzini Declaration, ¶ 3).

14.      The Ordinance does not allow temporary permits to be issued for signs on public rights-of-way. (Lenzini Declaration, ¶ 10).

15.     It is the City of Carbondale's practice to remove all signs in violation of the Ordinance when they are noticed. (Lenzini Declaration, ¶ 11).

40297362.v1

16.     If a citizen reports a sign in violation of the Ordinance, city officials respond to each complaint without discriminating based on content of the sign or identity of the speaker. (Lenzini Declaration, ¶ 12).

## STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 466 U.S. 317, 322 (1986). The movant has the burden of proving there is no genuine issue of material fact. *Celotex*, 466 U.S. at 323. The movant's burden may be satisfied by showing the plaintiff failed to introduce sufficient evidence to support the essential elements of his or her claims. *Id.* at 323-24. At the summary judgment stage, the evidence will be construed in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In First Amendment cases like the one at issue here, courts have affirmed summary judgment where a signage ordinance was found to be constitutional. *See, e.g., Constr. & Gen. Laborers' Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120, 1122-23 (7th Cir. 2019).

## ARGUMENT

## I.      Monell Liability Is Not Applicable Under These Facts.

As an initial matter, Plaintiffs claims are largely brought under § 1983, which prohibits a "person" acting under color of law from violating another's civil rights. 42 U.S.C. § 1983. The Supreme Court later held that municipalities and local governments are included as "persons" where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

40297362.v1

A Plaintiff alleging municipal liability must establish one of three types of conduct attributable to the municipality: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (cleaned up).

Moreover, a *Monell* claim cannot generally be made for an isolated incident. *City of Oklahoma City v. Tuttle*, 105 S.Ct. 2427, 2456 (1985) ("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.").

Where no constitutional violation took place, *Monell* liability is defeated because it cannot be said that there was any "custom, practice," etc. that caused the constitutional violation. *Gatjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021). Here, as detailed extensively below, the Ordinance was constitutional, facially and as applied, such that there was no constitutional violation. Even if there was a violation (there was not), assuming the Ordinance is facially constitutional (it is), Plaintiff has not alleged more than a single violation such that *Monell* would apply.

### A.    Carbondale's Ordinance is Plainly Constitutional.

The Ordinance is plainly constitutional under well-established First Amendment principles. The general rule is even in a traditional public forum, like a public right of way or sidewalk, a restriction that is content neutral and narrowly tailored to serve a significant government interest and that leaves open ample alternative avenues of communication will be constitutional. *Town of Grand Chute*, 915 F.3d at 1122-23. Such restrictions are often referred to

40297362.v1

as time, place, and manner restrictions because they regulate the way speech is presented rather than regulating the content of the speech itself. *See Leibundguth Storage & Van Service, Inc. v. Village of Downer's Grove, Illinois*, 939 F.3d 859, 862 (7th Cir. 2019) ("A limit on the size and presentation of signs is a standard time, place, and manner rule, a form of aesthetic zoning.")

Application of this general rule has led the Seventh Circuit to conclude and hold a municipality is entitled to implement a nondiscriminatory ban on all private signs from public roads and public rights-of-way. *Grand Chute*, 915 F.3d at 1123; *see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984) (holding an ordinance prohibiting posting of signs on public property was constitutional). This is precisely what the Ordinance at issue does. Indeed, the Ordinance constitutes an essentially total ban on all signs in the public right-of-way and does not even allow such signs via temporary permit application. The Ordinance does not allow any signs to be placed in the public right-of-way, with or without a permit.[1]

15.4.10.8(A)(1) of the Ordinance is extremely clear: "*No sign may be erected on, suspended over, or encroach upon the public right of way[.]*" Other portions of the ordinance, including but not limited to 15.4.10.9(A)(1) and 15.4.10.9(F)(3), reiterate this total ban and make clear that temporary signs, like the ones used by Plaintiff, are not permitted on public rights-of-way.

The Seventh Circuit in *Grand Chute* analyzed a nearly identical signage ordinance and determined the ordinance at issue was constitutional. *Grand Chute*, 915 F.3d at 1122-23. In *Grand Chute*, the court came to this conclusion in a dispute related to the display of a large inflatable rat

---

[1] The Ordinance provides that signs may not be erected on, suspended over, or encroach upon the public right-of-way, except as provided by 17-1-5 of the municipal code. Plaintiff makes no arguments related to 17-1-5 of the code, nor are the provisions in that portion of the code relevant to the instant dispute.

40297362.v1

by a local union. *Id.* at 1125-26. The *Grand Chute* case is essentially identical to the instant dispute, and the arguments addressed in that case are largely the same as those raised by Plaintiff in his Complaint. Accordingly, *Grand Chute* serves as a template and a guide throughout this Motion.

Additionally, to the extent Plaintiff alleges the Ordinance is unconstitutional because it is "vague" or "overbroad," these arguments lack merit and will only be addressed briefly. Specifically, Plaintiff alleges that the term "right of way" is vague, but this is a term of art used often in municipal ordinances. *See, e.g., McClanahan v. City of Tumwater*, 2012 WL 4113383, *6 (W.D. Wash. 2012) (finding, in the context of evaluating a signage ordinance, the term "right of way" has a generally accepted meaning and is not vague as a matter of law). "Right of way" has an exact meaning under the law. Under the Illinois Highway Code, the definition of "right of way" is "all property, whether it is presently being used for highway purposes or not, either under the jurisdiction of the [Illinois Department of Transportation] or owned in fee by the State of Illinois or dedicated to the People of the State of Illinois for highway purposes[.]" Ill. Admin. Code tit. 92, § 522.20.

Defendants were unable to locate, and Plaintiff has not pointed to, any authority suggesting that "right of way" is or could be considered "vague" in factually analogous circumstances. Under First Amendment jurisprudence, a law must only have a "reasonable degree of clarity so that a person of ordinary intelligence can grasp its import." *R.V.S., LLC. v. City of Rockford*, 266 F.Supp.2d 798, 811 (N.D. Ill. 2003) (interpreting ordinance in First Amendment challenge) (citing *Weinberg v. City of Chicago*, 310 F.3d 1029, 1042 (7th Cir. 2002)). "When passing on the vagueness of an ordinance federal courts will not hold an ordinance unconstitutional 'if a reasonable interpretation by a state court could render it constitutional in some application.'" *Id.*

40297362.v1

(citing *Gresham v. Peterson*, 225 F.3d 899, 908 (7th Cir. 2000)). Just as in *R.V.S.*, because the City of Carbondale's interpretation of the Ordinance is clear and reasonable, the Ordinance is not vague.

At the location of the incident in the Complaint, the right-of-way was extremely wide, some 220 feet. (Second Lenzini Declaration, ¶¶ 3-7). There is no serious debate that Plaintiff was in the "right of way" at the time of the April 16, 2025 incident. (Lenzini Declaration, ¶ 7). Plaintiff attempts to make a straight-forward term confusing through convoluted arguments and then turns around and calls it "vague." The Court should not be persuaded by Plaintiff's intentionally twisted arguments on this point. The following analysis demonstrates the Ordinance is constitutional on its face.[2]

### 1.    Content-Neutrality

"Content-neutrality" is one of the key prongs analyzed in determining constitutionality of a speech restriction in a traditional public forum. *Id.* at 1122-23. A restriction is generally content based (and not content neutral) where those enforcing it must examine the content of the message to determine whether a violation has occurred. *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984). When determining whether a law is content based or content neutral, courts look to the government's purpose in creating and enforcing the law. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Here, as previously established, the Ordinance creates a total ban on signs in the public right-of-way.[3] To the extent Plaintiff argues otherwise, the Supreme Court has made clear that even if a signage restriction requires review of the content of the sign to determine if it applies,

---

[2] Plaintiff also briefly alleges that the Ordinance may be overbroad. (Compl. ¶ 96). Courts have found that where an ordinance restricting speech is "reasonable" and "narrowly tailored" to promote legitimate governmental interests, the regulation necessarily cannot be overbroad. *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 482 (1989). The analysis below establishes that the Ordinance is narrowly tailored to significant government interests.
[3] Again, any possible exceptions to the clear language of the Ordinance are not argued by Plaintiff.

40297362.v1

that does not make it content based. *See, e.g., City of Austin v. Reagan National Advertising of Austin, LLC*, 142 S.Ct. 1464, 1471 (holding that a regulation of signs is not automatically content based merely because to apply the regulation, a reader must ask who is speaking and what the speaker is saying); *see also Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."). Just like the restrictions in *City of Austin*, the Ordinance herein is "agnostic" as to content, and is therefore also not viewpoint or content based. *City of Austin*, 142 S.Ct. at 1471.

In his Complaint, Plaintiff does not even appear to clearly dispute that the Ordinance itself is content neutral. Plaintiff only argues that it is *applied* in a viewpoint-based manner (which it is not), as more fully discussed below. Either way, the Ordinance mandates that signs may not be affixed to or encroach upon the public right-of-way, regardless of the content of the signs or the identity of the speaker.

### 2.    Narrow Tailoring to Significant Government Interests

In *Grand Chute*, the court noted the municipality's ordinance was narrowly tailored to meet the public purpose of banning signs obstructing vision or distracting drivers. *Id.* at 1125-26. Courts analyzing similar ordinances have regularly found that traffic and pedestrian safety, as well as community aesthetics, are considered "significant government interests" which an ordinance may properly seek to address. *See, e.g., Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 979 (9th Cir. 2009); *Metromedia v. City of San Diego*, 453 U.S. 490, 507-08 (1981).

40297362.v1

Here, the Ordinance itself clearly details the same justifications in 15.4.10.2.[4] As such, the Ordinance is clearly crafted to preserve significant government interests well established by precedent.

The Ordinance is also clearly narrowly tailored. At the district court level in *Grand Chute*, the court found the statute was narrowly tailored because the ban on signs was applied "in an evenhanded manner and without regard to content of the message or the identity of the speaker." *Constr. & Gen. Laborers' Local Union No. 330 v. Town of Grand Chute*, 297 F. Supp. 3d 850, 865 (E.D. Wis. 2018), *aff'd in part, vacated in part, remanded sub nom. Constr. & Gen. Laborers' Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120 (7th Cir. 2019).

There is no evidence that the Ordinance herein was not applied in an evenhanded manner. Moreover, the Ordinance is content neutral because it bans all signs on public rights-of-way without regard to the speaker or the content of the message. To the extent Plaintiff may argue that because the Ordinance could be less restrictive or more narrowly tailored, i.e., perhaps by allowing signs to be staked in the ground for brief periods of time while he talks to people in their cars, it is unconstitutional, these arguments have no basis in First Amendment jurisprudence. [Doc. 8 at 12-13] ("Motion for Preliminary Injunction").

The Supreme Court has made clear the requirement of narrow tailoring does not demand the most restrictive means possible. *See Hill v. Colorado*, 120 S. Ct. 2480, 2482 ("When a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving

---

[4] Justifications include "to preserve, protect and promote the public safety on city streets by limiting the unnecessary distraction of the motorist caused by signs" and "to preserve and protect the property values of the city's residential neighborhoods by protecting these areas' visual character from the blighting effects of uncontrolled signs."

40297362.v1

the statutory goal."); *see also Town of Grand Chute*, 915 F.3d at 1126. The Ordinance is therefore narrowly tailored to significant government purposes, such that it is constitutional.

### 3.    Alternative Means of Communication

Where alternative means of communication are available, a content-neutral restriction on speech is more likely to be constitutional. *Grand Chute*, 297 F. Supp. at 866. In this case, reasonable alternative means of communication are available under the Ordinance, and not only was Plaintiff advised of these alternative means at the time of the incident in question (i.e. walking on the sidewalk holding the signs), the evidence demonstrates others present with Plaintiff chose to use the alternative means of communication and made use of the public right-of-way to freely express their message and exercise their First Amendment rights without incident and without safety issues. (Lenzini Declaration, ¶ 6).

At the district court level in *Grand Chute*, the court noted that, despite the plaintiff's argument that the suggested alternative means may pose safety concerns, the fact was that there were still other effective avenues for communication available. *Id.* The court specifically stated that the "Union [was] free to depict the rat in handheld signs, by using smaller rat balloons that are not staked to the ground, by having a member wear a rat or a cat costume." *Id.* These reasonable alternatives suggested and approved in *Grand Chute* are the same reasonable alternatives available to Plaintiff and all other similarly situated citizens in the instant case.[5]

Indeed, as evidenced by Plaintiff's own body camera footage, Plaintiff was informed he was allowed to carry his signs but was not permitted to stick them in the public right-of-way.

---

[5] In paragraph 71 of the Complaint, Plaintiff asserts, without citation, that "[t]he Supreme Court has found that an ordinance which required the holding of a sign rather than staking it to the ground did not leave open sufficient alternative channels for communication and it, therefore, unconstitutionally prohibited speech." Defendants have been unable to locate the case Plaintiff purports to reference here, and since Plaintiff has declined to provide a citation, Defendants respond to the best of their ability.

40297362.v1

(Compl. ¶ 49). Other protestors present with Plaintiff at the time of the incident referenced in the Complaint were safely carrying their signs without incident. (Lenzini Declaration, ¶ 6). Plaintiff could have instead worn the sign (i.e., like a sandwich board) or carried his sign without violating the Ordinance. There is no serious dispute that the Ordinance, in accordance with the First Amendment, allowed the carrying of signs on public rights-of-way. For this reason, there were reasonable alternative means of communication available to Plaintiff permitted by the Ordinance.

**B.      Carbondale's Ordinance is Enforced and Applied in a Constitutional Manner.**

In his Complaint, Plaintiff pleads only on "information and belief" that the Ordinance is applied to impermissibly target religious speakers. (Compl. ¶ 84). Later, in his Motion for Preliminary Injunction, Plaintiff mistakenly asserts that even if the Ordinance is content neutral, it is applied in a discriminatory, content or viewpoint-based manner. (Motion for Preliminary Injunction at 1). While it is true that even a content-neutral ordinance may violate the First Amendment if it is selectively enforced, Plaintiff provides insufficient evidence herein to support such an assertion.

In making this argument, Plaintiff relies on haphazardly taken photographs of signs purported to be in the public-right-of-way. [Doc. 8-1, ¶ 40; Doc. 8-2]. However, the photographs lack the necessary context and information to determine whether they actually depict signs in violation of the Ordinance. First, the photographs do not include location descriptions, so it is entirely possible some of the photographed signs are not even located in Carbondale's jurisdictional limits. Some of the signs pictured—in particular, a sign promoting a "Fish Fry"— appear to be outside of the public right-of-way and, therefore, not subject to the same portions of the Ordinance at issue in this dispute. [Doc. 8-2 at 6]. Additionally, the photographs do not depict the timing of the sign placement, so it is entirely possible that the signs had been placed in their

40297362.v1

respective locations shortly before the photograph was taken such that the city did not yet have an opportunity to remove them. [Doc. 8-2 generally].

Most importantly, it is the City of Carbondale's practice to remove all signs in violation of the Ordinance when they are noticed. (Lenzini Declaration, ¶ 11). If a citizen reports a sign in violation of the Ordinance, city officials respond promptly to each complaint without discriminating based on content. (Lenzini Declaration, ¶ 12). Defendants acknowledge that they may not track down every illicit sign as soon as it appears (or at all), but courts have not found inadvertent failures to find every single unauthorized sign to be a basis for finding an ordinance unconstitutional as applied. The City of Carbondale's practice is to investigate all citizen complaints about signs and pull any violating signs when noticed, and there is absolutely no indication or evidence herein that city officials selectively pick and choose which citizen complaints to investigate or which signs to pull.

Plaintiff in *Grand Chute* advanced the same argument. *Grand Chute*, 915 F.3d at 1123. In *Grand Chute*, the plaintiff union officials photographed other signs within the town that allegedly did not comply with the signage ordinance, and the city official in charge admitted that he may not have "ferreted out every non-compliant sign on a public right-of-way in the Town." *Id.* at 1125. This, along with testimony from city officials addressing their policy of removing all signs when noticed, was enough for the district court to conclude that the municipality did not discriminate on the basis of content through selective enforcement. *Id.* at 1125-26.

As in *Grand Chute*, even though Carbondale may not "ferret out" every single non-compliant sign, Carbondale's practice is to do its best to remove all such signs regardless of content.

Because the Ordinance was not applied in an unconstitutional manner, and Plaintiff
provides no clear allegation that it was, the Ordinance is constitutional as applied, and summary
judgment should be granted on this basis.

### C.    Defendants Did Not Violate Any Constitutional Right by Declining to Issue a Temporary Permit to Plaintiff.

Throughout his Complaint, Plaintiff makes repeated reference to a provision in the
Ordinance, 15.4.10.8, related to obtaining a permit for temporary signs, arguing that he went to
City Hall to obtain such a permit. (*e.g.,* Compl. ¶¶ 1-2, 22, 25). However, Plaintiff misstates the
content of the Ordinance.

The Ordinance, at 15.4.10.8, addresses temporary signs permitted only on private property.
To be sure, when a person or entity applies for a permit under this portion of the ordinance, a
condition of approval is that "[s]igns shall be erected entirely on private property" and "[s]igns
shall conform to Section 15-4-10 of the Carbondale Revised Code." Samples of permits issued
under the Ordinance are attached hereto as **Exhibit A**. Plaintiff also refers to a provision
(15.4.10.8(A)(5)(b)(2)) related to temporary permits for 501(c) organizations. (Compl. ¶ 2). Again,
this provision only allows temporary permits to be issued for private property. The permits
attached in Exhibit A were issued to 501(c) organizations under the Ordinance. The incident
referenced by Plaintiff in his Complaint did not occur on private property but instead occurred in
a public right-of-way; therefore, Plaintiff's arguments on this point are irrelevant. (Lenzini
Declaration, ¶ 7).

The City of Carbondale does not issue permits to anyone, including a 501(c), to display a
sign in a public right-of-way. Neither of the above provisions are at issue in this dispute because
Plaintiff was displaying his signs on a public right-of-way, and the Ordinance does not allow
placement of signs on a public right-of-way via permit.

40297362.v1

However, even if the exception for 501(c) organizations applied to public property, Plaintiff lacks standing to raise this argument. It is well established that in the First Amendment context, one need not actually apply for a permit to have standing. *Freedman v. State of Md.*, 380 U.S. 51, 56 (1965); *Kissick v. Huebsch*, 956 F. Supp. 2d 981, 990 (W.D. Wis. 2013). However, the standing inquiry is still applicable, and a Plaintiff must at least be part of the group to which the ordinance could apply.

For example, the Supreme Court in *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988) noted that, in the First Amendment context, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." (emphasis added). This makes clear that to have standing one must at least be "subject to" the law at issue. Although Plaintiff's Motion (Pages 1-2) and Complaint (Paragraph 34) allege his ministry operates under the authority of Christ Church Carbondale, Plaintiff's Motion and Complaint fail to actually allege he is acting directly on behalf of a 501(c) organization such as Christ Church Carbondale. Plaintiff is therefore not subject to the portion of the Ordinance allowing temporary permits for such organizations.

Because the Ordinance only allows temporary permit applications for signs on private property, Plaintiff's assertions as to these provisions are irrelevant. Even if Plaintiff could apply for a temporary permit on behalf of a 501(c) organization, he does not have standing to do so.

For these reasons, Plaintiff does not allege a constitutional violation related to the City's failure, through Defendants, to issue a permit. Since there is no constitutional violation, this Motion for Summary Judgment should be granted.

40297362.v1

II.     **Summary Judgment Should Also Be Granted on the Illinois Religious Freedom
        Restoration Act Claim (Count VII) Against Defendants Because Plaintiff Was Not
        Substantially Burdened in the Exercise of Religion.**

Count VII of Plaintiff's Complaint alleges a violation of the Illinois Religious Freedom

Restoration Act. Under the Illinois Religious Freedom Restoration Act, government regulation

may "substantially" burden the exercise of religion so long as it (1) "is in furtherance of a

compelling governmental interest" and (2) "is the least restrictive means of furthering that

compelling governmental interest." *Baumgartner v. City of Chicago*, 759 F.Supp.3d 868, 879

(N.D. Ill. 2024). For government action to constitute a "substantial burden" on religious exercise,

such action must "bear direct, primary, and fundamental responsibility for rendering religious

exercise effectively impracticable." *Irshad Learning Center v. County of DuPage*, 804 F.Supp.2d

697 (N.D. Ill. 2011) (cleaned up) (quotations omitted). Courts have also found that, to constitute a

showing of a substantial burden on religious practice, a "plaintiff must demonstrate that

government action prevents him from engaging in conduct or having a religious experience that

his faith mandates." *Diggs v. Snyder*, 333 Ill.App.3d 189, 195, 775 N.E.2d 40 (5th Dist. 2002).

Here, there was clearly no substantial burden on Plaintiff's religious exercise because, as

discussed above, he had alternative means of communication available at the location he wished

to demonstrate. The Ordinance merely applies a time, place, and manner restriction to Plaintiff's

speech. Plaintiff was informed that he was permitted to hold the signs; he just was not permitted

to stake them into the ground. (Compl, ¶ 49).

Plaintiff offers no explanation for why carrying the signs instead would constitute a

"substantial burden", and Defendants have been unable to locate any authority finding this to be

the case. Plaintiff also did not assert that he was required by the basic tenets of his religion to

demonstrate specifically by staking signs into the ground. As such, because Plaintiff failed to

40297362.v1

allege a "substantial burden" on the exercise of his religion, summary judgment should likewise be granted for Count VII.

## CONCLUSION

Plaintiff's Complaint and the current record raise no genuine issue of material fact. Accordingly, Defendant is entitled to judgment as a matter of law. Because the Ordinance does not violate the Constitution, facially or as applied, summary judgment should be granted in favor of Defendant on Counts I-VI. Summary judgment should likewise be granted on Count VII because Plaintiff was not substantially burdened in the exercise of his religion.

WHEREFORE, Defendant City of Carbondale moves this Court to grant its motion for summary judgment and for such other and further relief as this Court deems just and equitable.

SANDBERG PHOENIX & von GONTARD P.C.

By:     */s/ A. Courtney Cox*
        A. Courtney Cox, #6182590
        John L. Gilbert, #954101
        Philip J. Lading, #6271659
        101 W. Vandalia Street, Suite 300
        Edwardsville, IL 62025
        618-659-9861
        618-659-9862 (Fax)
        Email: ccox@sandbergphoenix.com
        Email: jgilbert@sandbergphoenix.com
        Email: plading@sandbergphoenix.com

        *Attorneys for Defendants*
        *City of Carbondale, an Illinois municipal*
        *corporation, John Lenzini, in his individual and*
        *official capacities, and Lenoard Jamie Snyder*
        *in his individual and official capacities*

## Certificate of Service

The undersigned certifies that on the 10th day of July 2025 the foregoing was filed electronically with the Clerk of the Court and was served upon all counsel of record via the court's electronic service to the following:

Kelsey E. McGee
Stuart J. Roth
Nathan J. Moelker
Liam R. Harrell
Christina A. Compagnone
American Center for Law & Justice
P.O. Box 90555
Washington, DC 2009-0555
kmcgee@aclj.org;
sroth@aclj.org
nmoelker@aclj.org;
lharrell@aclj.org;
ccompagnone@aclj.org
*Counsel for Plaintiff*

*/s/ A. Courtney Cox*

40297362.v1