## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

BRANDON HAMMAN,

*Plaintiff,*

*v.*

The CITY OF CARBONDALE, an Illinois municipal corporation, JOHN LENZINI, in his individual and official capacities, and LENOARD JAMIE SNYDER, in his individual and official capacities,

*Defendants.*

Case No. 3:25-cv-00736-NJR

**Chief Judge Nancy J. Rosenstengel**

---

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AGAINST THE CITY OF CARBONDALE

---

Plaintiff Brandon Hamman, by and through counsel, respectfully files this Motion for Summary Judgment. The City of Carbondale, by filing a Rule 56 motion instead of a responsive pleading, has admitted to the factual allegations in the Complaint. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013). With the material facts no longer in dispute, the case against Defendant City of Carbondale is now ripe for summary judgment. By failing to answer Plaintiff's complaint, the City has admitted that it "adopted an unwritten policy of enforcing the ambiguous Ordinance in an aggressive manner towards religious speakers because of the viewpoint of their speech." Complaint ¶ 90. That admission alone requires judgment for Plaintiff.

## PROCEDURAL BACKGROUND

On April 29, 2025, Plaintiff Brandon Hamman filed a complaint against all Defendants, including the City of Carbondale. (Doc. 1). After an unopposed Motion for Extension of Time (Doc. 15), responsive pleadings were ordered due on July 10, 2025. (Doc. 16). The two individual Defendants, John Lenzini and Leonard Snyder, filed a Rule 12 motion on July 10. (Doc. 25). However, the City of Carbondale filed neither an answer nor a Rule 12 motion, instead electing to file a Rule 56 motion. (Doc. 26). Plaintiff now files this motion for summary judgment against the City. Plaintiff will respond separately to the City of Carbondale's Rule 56 Motion for Summary Judgment and the other Defendants' Rule 12 motion within the time allotted by Loc. R. Civ. P. 7.1(B)(1).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff Brandon Hamman is a pro-life advocate who serves as a missionary, spending his time as a sidewalk counselor. (Compl. ¶ 14.)

2. Defendant City of Carbondale is a municipal corporation duly incorporated under the laws of the State of Illinois. (Compl. ¶ 15.)

3. Defendant John Lenzini is a "Community Development Manager" employed by the City of Carbondale. (Compl. ¶ 16.)

4. Defendant Jamie Snyder is the City Attorney of Carbondale. (Compl. ¶ 17.)

5. Plaintiff is the founder of Gospel for Life, a non-profit organization under the authority of his church, Christ Church Carbondale, a 501(c)3 non-profit organization.

(Compl. ¶ 34.)

6.      Gospel for Life is an organization focused on proclaiming the gospel and providing biblical counsel to women in crisis pregnancies. (Compl. ¶ 35.)

### The Carbondale Ordinance

7.      Carbondale has adopted a comprehensive scheme regulating public signs. (Compl. ¶ 19.)

8.      Carbondale § 15.4.10.3(G) provides that, among the list of prohibited signs are "[t]emporary signs, except as allowed by section 15.4.10.8 of this chapter[.]" (Compl. ¶ 20.)

9.      The Ordinance, § 15.4.10.8(A)(1), provides that "[n]o sign may be erected on, suspended over, or encroach upon the public right of way, except as provided for under section 17-1-5 of this code (dealing with 'encroachments'), or be located so as to obstruct the visual clearance needed for safe vehicle or pedestrian traffic." (Compl. ¶ 22.)

10.     The Ordinance itself contains no definition of "right of way." (Compl. ¶ 23.)

11.     It is nowhere stated expressly whether § 17-12-2's definition applies to § 15.4.10.8(A)(1). (Compl. ¶ 25.)

12.     Section 15.4.10.8(A)(3) prohibits temporary signs within twenty feet of the curb line of an adjoining street. (Compl. ¶ 29.)

13.     Section 15.4.10.8(A)(5)(a) contains certain requirements for temporary commercial signs and seemingly exempts those used for demonstrations. (Compl. ¶ 30.)

14. The Ordinance states that "[t]his provision is directed toward such displays intended to draw attention for a commercial purpose, and is not intended to limit the display of banners, flags or other signage by persons participating in demonstrations, political rallies, and similar events." (Compl. ¶ 30.)

15. The Ordinance provides that "[e]ach individual 501(c) not for profit organization will be allowed to display a temporary sign for a period not to exceed thirty (30) consecutive days. Each organization is allowed a total of sixty (60) calendar days to display temporary signs. A new permit shall be issued each time the temporary sign is to be displayed." (Compl. ¶ 31.)

**The April 16, 2025, Incident**

17. On April 16, 2025, Plaintiff and other demonstrators were peacefully demonstrating near CHOICES Center for Reproductive Health at 600 N Giant City Road in Carbondale, Illinois. (Compl. ¶ 36.)

17. At around 10:00 a.m., Defendant Lenzini approached Plaintiff while Plaintiff and others exercised their rights to demonstrate a sincere religious belief, stating that the signs Plaintiff and others were using in the demonstration were "in violation" as commercial signs according to the City Attorney (Defendant Snyder). (Compl. ¶ 37.)

18. Defendant Lenzini was intractable in declaring that signs offering "free baby supplies" were not a constitutionally-protected demonstration. (Compl. ¶ 38.)

19. Defendant Lenzini reiterated repeatedly that he had talked to Defendant

Snyder and the instructions he provided originated from Defendant Snyder, who had "assured me they can't be there." (Compl. ¶ 39.)

20.    Defendant Lenzini stated he "just talked to the city attorney and he told me the signs were in violation . . . free baby supplies is not a demonstration." (Compl. ¶ 40.)

21.    Plaintiff, disagreeing with Defendant Lenzini's declarations, retrieved other signs from his car that specifically did not offer goods or services but were demonstrative in nature in order to avoid allegations of commercial speech. (Compl. ¶ 41.)

22.    These additional signs read "we will adopt your baby," "love your preborn neighbor as yourself," and "there may be time to save your baby, abortionpillreversal.com." (Compl. ¶ 42.)

23.    Plaintiff presented Defendant Lenzini with a written version of Carbondale Ordinance § 15.4.10.8 and the exception for First Amendment activity, such as demonstrations, that is included in the Ordinance. (Compl. ¶ 43.)

24.    Plaintiff further asserted his right to public demonstrations, saying, "I am demonstrating against abortion, I have a right to do that." (Compl. ¶ 44.)

25.    Defendant Lenzini responded, "No, you don't." (Compl. ¶ 45.)

26.    Defendant Lenzini told Plaintiff that Defendant Snyder ordered Defendant Lenzini to pull up the signs, going so far as to show Plaintiff a text from Defendant Snyder to that effect. (Compl. ¶ 46.)

27.    Plaintiff, asserting his First Amendment rights and knowledge of the

Ordinance, refused to move the signs. (Compl. ¶ 47.)

28.    At approximately 10:25 a.m., Defendant Lenzini began writing a citation for
Plaintiff. (Compl. ¶ 48.)

29.    At approximately 10:34 a.m., City of Carbondale police officers arrived and
told Plaintiff that the signs "can't be in the ground." (Compl. ¶ 49.)

30.    Police officers further stated that Plaintiff could "hold them and walk
around, but I guess they can't be on the easement." (Compl. ¶ 49.)

31.    After further speaking with Carbondale police officers, Plaintiff asked them
whether there would be any violation if he moved the signs twenty feet from the curb as
per the Ordinance. (Compl. ¶ 51.)

32.    The officers responded that there would be no violation. (Compl. ¶ 52.)

33.    Defendant Lenzini told the officers that Defendant Snyder had told him that
there are no signs allowed on public property, even when at least twenty feet from any
street or right of way. (Compl. ¶ 53.)

34.    Defendant Lenzini stated that if the signs were removed, there would be no
citation. (Compl. ¶ 54.)

35.    After consulting with his attorneys, Plaintiff complied by removing the
signs, and no citation was issued. (Compl. ¶ 55.)

**The April 17, 2025, Permit Application Attempt**

37.    On April 17, 2025, Plaintiff went to Carbondale City Hall to obtain a sign

permit for a 501(c)(3) organization to place signs on public property. (Compl. ¶ 56.)

38.    When Plaintiff arrived, Plaintiff again encountered Defendant Lenzini, who avowed that there was no such permit and that he would not issue a permit to Plaintiff, despite the language in § 15.4.10.8(A)(5)(b)(2) providing for the issuance of temporary permits. (Compl. ¶ 57.)

39.    Defendant Lenzini asserted that "you can only get a sign permit if you own the property" and "you can carry [the signs] like we told you yesterday." (Compl. ¶ 58.)

40.    Nothing in Ordinance § 15.4.10.8 states that a 501(c)(3) can only acquire a permit if it is on the 501(c)(3)'s personal property. (Compl. ¶ 59.)

41.    Rather, § 15.4.10.8(A)(5)(b)(3) states the direct opposite: "[t]emporary signs need not be located on the site for which the event is to take place." (Compl. ¶ 59.)

42.    Plaintiff left Carbondale City Hall with no permit or further direction from the City on how to obtain a permit per the Ordinance. (Compl. ¶ 60.)

**Post-Incident Communications**

43.    By and through counsel, Plaintiff sent a demand letter on April 22, 2025, demanding written assurances on or before 1:00 pm CDT on April 29th, 2025, that Plaintiff may demonstrate with temporary signs that comply with the requirements set out in Carbondale Ordinance § 15.4.10.8. (Compl. ¶ 61.)

44.    No response to this letter has been provided. (Compl. ¶ 62.)

45.    By not responding to this letter, Defendants have adopted an unwritten

policy that effectively bans demonstrators like Plaintiff from using temporary signs, despite language in the Ordinance itself that would arguably permit it. (Compl. ¶ 63.)

## Constitutional Violations

46.    Plaintiff engaged in religious and political speech and intended—and still intends—to continue engaging in such speech in public in Carbondale. (Compl. ¶ 67.)

47.    Plaintiff's speech was on open public land, the kind of area that has been traditionally open to the public. (Compl. ¶ 68.)

48.    The Ordinance is ambiguous in a variety of key provisions. (Compl. ¶ 73.)

49.    The Ordinance's vagueness fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited. (Compl. ¶ 75.)

50.    The Ordinance's vagueness encourages arbitrary and discriminatory enforcement. (Compl. ¶ 76.)

51.    Defendants are engaging in a targeted practice of enforcing their interpretation of the Ordinance against only religious speakers. (Compl. ¶ 84.)

52.    Defendants have discriminated on the basis of viewpoint, targeting religious viewpoints for suppression that is unjustified by the written text of the Ordinance. (Compl. ¶ 89.)

53.    Defendants have adopted an unwritten policy of enforcing the ambiguous Ordinance in an aggressive manner towards religious speakers because of the viewpoint of their speech. (Compl. ¶ 90.)

54.    Plaintiff's temporary placement of his signs in the public area around the public sidewalk presented no adverse effects, such as obstruction of pedestrian or automobile traffic. (Compl. ¶ 95.)

55.    Plaintiff continues to suffer irreparable harm because his speech has been chilled out of concern that he will be cited if he were to use temporarily staked signs again, even though this manner of speech is protected under the First Amendment. (Compl. ¶ 98.)

## ARGUMENT

### I.    Because the City has not timely filed a Responsive Pleading, it has admitted to the allegations in the Complaint.

Defendant City of Carbondale has waived its right to contest the facts above and has admitted to them. FED. R. CIV. P. 8(B)(6) provides that defendants, like the City, who fail to file a timely responsive pleading have admitted the allegations in the complaint. In a similar procedural scenario, one in which a defendant filed only a Rule 56 motion and no responsive pleading, the Seventh Circuit concluded:

> [F]ailure to deny an allegation constitutes an admission. FED. R. CIV. P. 12(A)(1); FED. R. CIV. P. 8(B)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). While serving a Rule 12 motion tolls the deadline for a defendant to file an answer, filing a Rule 56 motion has no such effect. *Compare* FED. R. CIV. P. 12(a)(4) *with* FED. R. CIV. P. 56.

*Modrowski*, 712 F.3d at 1170; *see Dunbar v. Prelesnik*, No. 16-1374, 2016 U.S. App. LEXIS 24225, at *5 (6th Cir. Oct. 27, 2016); *Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415

(10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually."); *Cent. Nat'l Gottesman, Inc. v. J.S. Paluch Co.*, No. 19-cv-06997, 2021 U.S. Dist. LEXIS 129172, *9 (N.D. Ill July 12, 2021).

In *Modrowski*, the Seventh Circuit described the strategy of responding to a complaint "with a motion for summary judgement, unaccompanied by any other responsive pleading," as "risky," because a Plaintiff can simply "point[] to 'admissions on file' to support his allegations." *Modrowski*, 712 F.3d at 1170 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). One court has described the decision to file a motion for summary judgment rather than a responsive pleading as "not merely 'technical error,' or even an 'unorthodox strategy' as put by the court in *Modrowski v. Pigatto*, but suggests a greater misunderstanding of the operation and interaction of Rule 12 and Rule 56." *Paci v. Elmhurst Auto Werks, Ltd..*, 2014 U.S. Dist. LEXIS 207402, *3 (N.D. Ill. May 30, 2014). The court emphasized that by proceeding in this fashion, defendants' "counsel did not adequately consider the consequences of proceeding in this manner." *Id.* Though the City of Carbondale has filed a motion for summary judgment, it has *not* filed a responsive pleading, nor done anything else to toll the deadline for answering Plaintiff's Complaint. Therefore, pursuant to FED. R. CIV. P. 8(b)(6), all allegations in Plaintiff's Complaint are admitted by the City of Carbondale.

II.    **Because Plaintiff has established all factual elements of his claims, this Court should grant summary judgment.**

The City's failure to answer or toll the deadline to answer Plaintiff's Complaint is dispositive here. Plaintiff proceeds through each count in his Complaint in turn, although the focus here is on the right to Free Speech under the First Amendment.

### A. Count I: Carbondale Ordinance § 15.4.10.8 is facially unconstitutional and void for vagueness.

Government entities are strictly limited in their ability to regulate private speech in traditional public forums. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)). "Vague rules are overbroad because their scope is uncertain and . . . they tend to produce large chilling effects." *Brown v. Kemp*, 86 F.4th 745, 771 (7th Cir. 2023). The mechanisms by which vague rules cause chilling effects are two-fold. A statute can be impermissibly vague where it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts."). "[W]here a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.'"

*Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

The City has conceded the assertions that "[t]he vagueness of the Ordinance substantially chills the speech of citizens," Compl. ¶ 74, that "[t]he Ordinance's vagueness fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited; for example, ordinary people do not know whether they are allowed to place signs on public land if more than twenty feet from a right of way," Compl. ¶ 75, and that "[t]he Ordinance's vagueness encourages arbitrary and discriminatory enforcement; for example, no standard is given to regulate how permits must be issued." Compl. ¶ 76. These concessions and admissions demonstrate the vagueness of the Ordinance; it is so vague in its scope and application that ordinary people fail to understand its meaning and lack knowledge of its scope.

This vagueness is further illustrated by the Defendants' own conduct and the City's fluctuating justifications for its conduct. The City's first reasoning was that the signs were "commercial." Compl. ¶¶ 37–40. Then the City represented the signs were merely not allowed on the "easement" near the street. Compl. ¶¶ 49–52. Only then did the City adopt the view that signs were completely prohibited on public property. Compl. ¶ 53. Defendants themselves fluctuated repeatedly in their understanding of the scope and effects of the Ordinance. If trained government officials cannot consistently apply the ordinance, ordinary citizens certainly cannot comply with it.

To the extent the City may argue that any such concessions are questions of law,

the Ordinance speaks for itself, illustrating its own ambiguities. Most importantly, §

15.4.10.8(A)(1) contains no definition of "public right of way," leaving, as was

demonstrated by the admitted conduct of Defendants at issue here, it unclear and

ambiguous to the ordinary reader the permissibility of signs on some public lands.

Defendants in their briefing have cited to definitions from a variety of other ordinances

and provisions, some of which are so broad as to define "public right of way" as any land

owned by the government at all. None of these proposed definitions are contained within

the Ordinance itself. In reading the text of the Ordinance, the average reader of ordinary

intelligence will have no way of knowing what signs are permitted. This vagueness

cannot be cured by complex representations in litigation not based in the Ordinance itself.

Moreover, § 15.4.10.8(5)(a)(4) allows non-profit organizations to apply for permits

to display temporary signs. It fails to articulate, however, any standard whereby permit

requests are reviewed and approved. Compl. ¶ 73(D). By not answering the Complaint,

Defendants have admitted this fact, but it is also clear from the plain text of the Ordinance.

The Ordinance creates a system of permits for non-profit organizations but provides no

standard whatever whereby those permits are or are not granted. A law must not "vest[]

unbridled discretion in a government official over whether to permit or deny expressive

activity." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755 (1988). The

Constitution does not tolerate a law "so standardless that it authorizes or encourages

seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

By allowing for permits to non-profits without giving a standard whereby they are adjudicated, the City of Carbondale has created just such a broad ordinance that threatens speech through the unbridled discretion of government officials.

### B. Count II: Carbondale Ordinance § 15.4.10.8 violates the First Amendment as applied to Plaintiff's conduct.

Defendants have conceded that the location where Hamman exercised his constitutional rights to engage in pro-life speech, a grassy area owned by the public, was a public forum. Compl. ¶¶ 60–69. It is a traditional public forum, a place "which by long tradition or by government fiat has been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

In a traditional public forum, the government may enforce content-neutral time, place, and manner regulations only if they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* at 45. Narrow tailoring requires that it "promotes a substantial government interest that would be achieved less effectively absent the regulation," and does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (citation omitted).

The City of Carbondale has conceded a crucial factual assertion: "Plaintiff's temporary placement of his signs in the public area around the public sidewalk presented no adverse effects, such as obstruction of pedestrian or automobile traffic." Compl. ¶¶ 95–96. Accordingly, the City has also conceded that "[a]ny asserted government interests

of keeping the public right-of-way clear and preserving the aesthetics of the community are simply not achieved any less effectively absent the application of the Ordinance in this case." Compl. ¶ 94. The City of Carbondale has conceded that no obstruction or impairment occurs when Plaintiff's small signs are displayed a significant distance from the road. Accordingly, the application of the Ordinance to speech like that of Plaintiff burdens far more speech than is necessary and the Ordinance is not narrowly tailored as applied to his speech.

The Ordinance allows signs "more than twenty feet from the curb line," Compl. ¶ 29, yet Defendants prohibited Plaintiff's signs even when moved to comply with this distance requirement. Compl. ¶¶ 51-53. Moreover, the Ordinance expressly exempts "persons participating in demonstrations," Compl. ¶ 30, yet Defendants refused to recognize Plaintiff's pro-life demonstration as protected activity, Compl. ¶¶ 38, 40, 44, 45. An ordinance that contains express exceptions for the plaintiff's conduct but is enforced to prohibit that same conduct is the antithesis of narrow tailoring.

In its prior briefing, Defendant City of Carbondale asks this Court to impose the most expansive construction possible on this Ordinance. Defendants have adopted what they present as a ban on all signs, even when, as conceded here, the physical location at issue was an open patch of grass, twenty feet from the sidewalk and street. Compl. ¶¶ 51-53. The Supreme Court has cautioned, the "existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated

differ depending on the character of the property at issue." *Perry Educ. Ass'n*, 460 U.S. at

44. A total ban on all public property glosses over public fora, fact sensitive analyses for

different locations, and any other nuances. Such a construction of the Ordinance would

be far broader than the City's legitimate interests.

### C. Counts II and III: Defendants' conduct constitutes viewpoint discrimination against pro-life views that violates the First Amendment.

Viewpoint discrimination is anathema to the First Amendment. As the Supreme

Court has made clear: "[d]iscrimination against speech because of its message is

presumed to be unconstitutional. . . . When the government targets not subject matter,

but particular views taken by speakers on a subject, the violation of the First Amendment

is all the more blatant." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828–

29 (1995). "It is axiomatic that the government may not regulate speech based on its

substantive content or the message it conveys." *Id.* at 828 (citing *Police Dept. of Chicago v.*

*Mosley*, 408 U.S. 92, 96 (1972)). A finding of viewpoint discrimination is dispositive in

showing that government action is unlawful. *See Sorrell v. IMS Health*, 564 U.S. 552, 571

(2011); *Good News Club v. Milford Cent. Sch. Dist.*, 533 U.S. 98, 106 (2001).

Plaintiff's allegations that Defendants have a practice of viewpoint discrimination

in their enforcement of Carbondale Ordinance 15.4.10.8 are an allegation of fact, not of

law. It is an allegation about the acts, practices, and conduct of Defendants. Accordingly,

the City has admitted that "Defendants have adopted an unwritten policy of enforcing

the ambiguous Ordinance in an aggressive manner towards religious speakers because of the viewpoint of their speech." Compl. ¶¶ 90, 111. The City has admitted that "rather than interpret the ambiguities in the Ordinance to allow activities more than twenty feet from the curb or right of way, Defendants have used the Ordinance as a tool to discriminate based on viewpoint and ban that speech." Compl. ¶ 91. The City has admitted that "the Ordinance expressly allows non-profits to apply for a permit, but Defendants have still refused to allow the Plaintiff to even make an application." Compl. ¶ 112. It admitted that "Defendant Lenzini discriminated against Plaintiff for his pro-life viewpoint by refusing to provide a permit form as per the Ordinance." Compl. ¶ 113.

By making these admissions, the City has admitted that it engages in discrimination based on viewpoint, targeting Plaintiff's religious speech for enforcement practices in a discriminatory fashion while not applying the Ordinance to speech of a different message. Specifically, the City has admitted to targeting religious pro-life views because of their message. None of the usual analysis of comparable speakers that courts often utilize (although Plaintiff has begun providing that comparison in the Preliminary Injunction) is necessary here; Defendants have simply admitted that they discriminate based on the viewpoint of the speaker, and that admission constitutes a constitutional violation.

### D.  Count IV: Carbondale Ordinance § 15.4.10.8 violates the Free Exercise Clause.

The City's conduct also violates the Free Exercise Clause through the same pattern

of discriminatory enforcement. The Constitution prohibits government actors from impermissibly burdening free exercise. Laws and conduct that burden a plaintiff's free exercise of religion are held to a standard of strict scrutiny if they are not neutral and generally applicable. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021). Defendants' conduct is neither neutral nor generally applicable, as the City has conceded by admitting the pattern of viewpoint discrimination. The government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* (citations omitted). That is precisely the course of conduct the City has admitted to. And it cannot satisfy strict scrutiny. Defendants substantially burdened Plaintiff's sincere religious exercise by prohibiting his religiously motivated pro-life demonstrations. As there is no compelling government interest and the prohibition is not the least restrictive means, this burden violates the Free Exercise Clause.

### E.  Count V: Defendants' conduct violates Due Process.

The Ordinance's vagueness, combined with Defendants' shifting explanations and refusal to clarify the permit process, denied Plaintiff fair notice and due process. Plaintiff's discussion of vagueness above is incorporated herein by reference; the Due Process Clause likewise prohibits laws that vaguely infringe upon the right to speak. If a statute fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," or does not provide "fair warning" of proscribed conduct, it is void for vagueness. *Grayned*, 408 U.S. at 108. For the same reasons discussed above,

Carbondale Ordinance § 15.4.10.8 violates the requirements of due process. It fails to give the ordinary reader knowledge of what conduct is prohibited.

### F. Count VI: Defendants' conduct violates Equal Protection.

By selectively enforcing the Ordinance against religious speakers while allowing similar speech by others, Defendants denied Plaintiff equal protection under the laws. As discussed *supra*, Defendant City has admitted to this pattern of religious discrimination that treats people differently in the placement of signs because of their religious speech. When an action targets a protected class such as religion, courts may uphold the classification only if it is "precisely tailored to serve a compelling governmental interest." *Sklar v. Byrne*, 727 F.2d 633, 636 (7th Cir. 1984) (quoting *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982)). That discrimination is also manifested by the City's refusal to allow Plaintiff to even apply for a permit. Compl. ¶¶ 56-58. Plaintiff was treated differently from those who are given permits pursuant to the Ordinance's text because of his religious speech. The City lacks any compelling reason to discriminate against religious groups in the placement of their signs or issuance of permits, and a practice of unequal viewpoint discrimination is not precisely tailored.

### F. Count VII: Defendants' conduct violates the Illinois RFRA.

Under 775 ILCS 35/15, the government may not substantially burden religious exercise unless it demonstrates a compelling interest achieved through the least restrictive means. Defendants have failed to make this showing, as discussed *supra*.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff requests that this Court grant Plaintiff's Motion for Summary Judgment and provide the relief requested by Plaintiff in his Complaint, including a ruling that Carbondale Ordinance 15.4.10.8 is unconstitutional on its face and an award of attorney fees.

Submitted: July 17, 2025

Respectfully submitted,

*s/ Nathan J. Moelker*
Nathan J. Moelker
Christina A. Compagnone
Liam R. Harrell
Kelsey E. McGee
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel: (202) 641-9160
Fax: (202) 546-9309
Email: nmoelker@aclj.org

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of July 2025, a true and correct copy of the above and foregoing document was filed electronically with the Clerk of the Court and was served upon all counsel of record via PACER.

*/s/ **Nathan J. Moelker***
Nathan J. Moelker
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 2002
Tel: (202) 641-9160
Fax: (202) 546-9309
Email: nmoelker@aclj.org

*Counsel for Plaintiff*
